**CONSOLIDATED RAIL CORPORATION,** Plaintiff–Appellee,

v.

**Wayne L. YASHINSKY,** Defendant–Appellant.

No. 97–1592.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 16, 1998.

Decided March 17, 1999.

Eric L. Clay, Matthew R. Halpin (argued and briefed), Lewis & Munday, Detroit, Michigan, for Plaintiff–Appellee.

Wayne L. Yashinsky (argued and briefed), Bloomfield Hills, Michigan, pro se.

Before: MARTIN, Chief Judge; KENNEDY and BATCHELDER, Circuit Judges.

## OPINION

KENNEDY, Circuit Judge.

Defendant Wayne L. Yashinsky appeals the District Court's denial of his "motion to purge" a contempt order against him and its denial of his motion to recuse the district court judge. The District Court entered the contempt order over ten years ago after Yashinsky failed to comply with a post-judgment subpoena. We find that the coercive aspect of the contempt order is now mooted because the underlying judgment has expired under Michigan's statute of limitations on judgments. However, the attorney fees and costs awarded in the contempt order are compensatory and are not moot. We reject Yashinsky's argument that the District Court judge should have recused herself because her statements do not indicate personal bias.

### I. Facts and Procedural History

In 1984, Consolidated Rail Corporation ("Consolidated Rail") filed an action against Wayne L. Yashinsky for legal malpractice. The District Court granted Consolidated Rail

a default judgment for $44,158.38 on March 19, 1986.[1] Plaintiff Consolidated Rail then attempted to conduct post-judgment discovery in order to collect from Yashinsky. The District Court issued a subpoena requiring Yashinsky to attend a deposition and provide financial records.

After Yashinsky failed to provide the requested records, the District Court held Yashinsky in contempt of court on November 10, 1986 "as a result of Defendant Yashinsky's wilful obstruction of post-judgment discovery." The District Court ordered Yashinsky to pay all costs and attorney fees incurred by the plaintiff from the date of entry of the default judgment to the date of the contempt order. Additionally, the District Court ordered Yashinsky to pay plaintiff Consolidated Rail $100 per day commencing on November 10, 1986 until Yashinsky provided the post-judgment discovery requested in the subpoena. Yashinsky did not appeal the District Court's order holding Yashinsky in contempt.

On September 28, 1995, defendant Yashinsky filed his first motion to purge the contempt order. This is not the motion before us in the instant appeal. The District Court denied the motion to purge and denied a subsequent motion for reconsideration. Defendant appealed and on November 27, 1996, this court affirmed the District Court's denial of defendant's motions to purge and for reconsideration.

Shortly before this court affirmed the denial of Yashinsky's first motion to purge, Yashinsky again moved the District Court to purge the contempt order. This second motion to purge was on a ground not previously available and not argued in his initial motion to purge, i.e., that the contempt order was intended to coerce compliance with post-judgment discovery and was now moot because the underlying judgment, the collection of which it sought to facilitate, had expired under Michigan's ten-year statute of limitations for the enforcement of judgments on March 19, 1996. Yashinsky also filed a motion for recusal or to disqualify the district judge. The District Court denied both mo-

tions and also denied a motion for reconsideration. Defendant Yashinsky appeals.

## II. Motion to Purge Contempt Order

▮ This court reviews a finding of civil contempt for abuse of discretion, *see Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir.1989), and we will also review the denial of a motion to purge a contempt order for abuse of discretion. Defendant's argument on appeal has two steps: first, the underlying default judgment has expired under Michigan's statute of limitations for judgments and, second, because of the expiration of the underlying judgment, the District Court should now purge the contempt order that resulted from Yashinsky's refusal to participate in the discovery necessary to enforce that judgment.

▮ We find that the underlying judgment has expired under Michigan's statute of limitations for judgments. As an initial matter, Michigan's statute of limitations applies to this action. The original complaint against Yashinsky by Consolidated Rail brought professional malpractice, negligence, and breach of contract claims, all state law claims. It stated that "jurisdiction is vested in this Court by 28 U.S.C. §§ 1331 [federal question] and 1332 [diversity] pursuant to diversity of citizenship between the parties." Whether the complaint was based on diversity or federal question jurisdiction, Michigan's statute of limitations would apply to this action. If the case is a diversity jurisdiction case, *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), requires the federal court to apply the Michigan statute of limitations under the *Erie* doctrine. *See also Atkins v. Schmutz Mfg. Co.*, 372 F.2d 762, 764 (6th Cir.1967) (holding that "[i]n diversity cases the law of the State in which a federal court sits must be followed with respect to the statute of limitations" (citing *Guaranty Trust*)). In any event, if the complaint housed some unnamed source of federal question jurisdiction, we would "borrow" the Michigan statute of limitations because no expressly applicable federal statute of limitations applies and the Michigan statute appears most suitable. *See DelCostello v. International Bhd. of Team-*

---

1. Defendant's appeal from the entry of the default judgment was denied by this court.

*sters,* 462 U.S. 151, 157, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

■ The Michigan statute of limitations on judgments provides a ten-year limit on the enforcement of judgments.[2] This limit is not absolute; a party can extend a judgment indefinitely by filing renewal actions to enforce the judgment, but a renewal action must be filed within ten years "from the time of the rendition of the judgment or decree." MICH. COMP. LAWS ANN. § 600.5809(3) (West Supp.1998); *see also Atlantic Richfield Co. v. Monarch Leasing Co.,* 84 F.3d 204, 205–06 (6th Cir.1996). Plaintiff Consolidated Rail did not file a renewal action within ten years from the rendition of the judgment here. Therefore, the statute of limitations on the judgment has run. Plaintiff's argument that collection efforts restart the ten year limit fails because the statute plainly requires a renewal *action* rather than collection efforts. The statute refers to "commenc[ing] *the action*" within ten years and states that "[w]ithin the applicable period of limitations prescribed by this subsection, an action may be brought upon the judgment or decree for a new judgment or decree. The new judgment or decree is subject to this subsection."[3]

While defendant is correct that the underlying default judgment has expired under the applicable statute of limitations, we find that the defendant is only partly correct that the contempt order should be "purged."[4] Among civil contempts, courts have distinguished between the compensatory and coercive functions of contempt orders. *See, e.g., Petroleos Mexicanos v. Crawford Enters., Inc.,* 826 F.2d 392, 400 (5th Cir.1987).[5] Compensatory contempt orders compensate the party harmed by the other party's contemptuous actions; coercive orders seek to cajole the party in contempt to act in the manner desired by the court.

The contempt order in the instant case had a compensatory function and a coercive function. The contempt order did three things: it placed Yashinsky in contempt of court, it

---

2. In relevant part, the Michigan statute provides: (1) A person shall not bring or maintain an action to enforce a noncontractual money obligation unless, after the claim first accrued to the person or to someone through which he or she claims, the person commences the action within the applicable period of time prescribed by this section. . . .
(3) Except as provided in subsection (4) [concerning support orders], the period of limitations is 10 years for an action founded upon a judgment or decree rendered in a court of record in this state, or in a court of record of the United States ... from the time of the rendition of the judgment or decree. . . . Within the applicable period of limitations prescribed by this subsection, an action may be brought upon the judgment or decree for a new judgment or decree. The new judgment or decree is subject to this subsection.
MICH. COMP. LAWS ANN. § 600.5809 (West Supp. 1998). Minor changes to the statute were made in 1996 but the changes do not affect the analysis here. *Cf.* MICH. COMP. LAWS ANN. § 600.5809 (West 1996).

3. Plaintiff's reliance on *Nathan v. Rupcic,* 303 Mich. 201, 6 N.W.2d 484 (1942), is misplaced. The *Nathan* court held that a suit to renew a judgment is commenced when a summons for an action to renew a judgment is placed in good faith in the hands of an officer for service. *See id.* at 485–86. Because no such renewal suit exists here at all, *Nathan* provides no support for the plaintiff's position.

4. Although Yashinsky asks us to "purge" the contempt order, we find this usage of "purge" misleading. The term "purge" should be reserved to describe what a contemnor can do to avoid or abbreviate a contempt sanction rather than how a court treats a contempt order. Consider the "paradigmatic coercive, civil contempt sanction[:] ... confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.' " *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (quoting *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). A contemnor can "purge" such a contempt by paying the alimony or, as in the case here, complying with the court's subpoena. Whether a court should moot or vacate a contempt order in full or in part after a contemnor has purged is a distinct issue.

5. The *Petroleos Mexicanos* court stated that "[c]ivil contempt can serve two different purposes. On one hand, civil contempt is used to enforce, through coerciveness, compliance with a court's order. On the other hand, civil contempt can be used to compensate a party who has suffered unnecessary injuries or costs because of the contemptuous conduct." 826 F.2d at 400.

ordered Yashinsky to pay plaintiff the costs and attorney fees incurred by plaintiff from the date of entry of the default judgment to the date of entry of the order, and it ordered Yashinsky to pay plaintiff $100 a day from the date of entry of the contempt order until Yashinsky complied with the post-judgment discovery requested by subpoena.

■ We hold that the expiration of the underlying judgment moots the coercive part of the contempt order—the $100 a day fine payable to the plaintiff. The daily fine here is coercive rather than compensatory because the daily fines appear designed to coerce Yashinsky into complying with the contempt order, there is no link between the costs Yashinsky caused Consolidated Rail to suffer and the amount of $100 per day, and the Supreme Court has recognized that per diem fines like this one are generally coercive. *See International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (noting that a "per diem fine imposed for each day a contemnor fails to comply with an affirmative court order" is coercive). Because the underlying judgment is no longer enforceable, the coercive part of the order no longer serves a purpose and is now moot. *See Petroleos Mexicanos*, 826 F.2d at 400 ("If the civil contempt proceeding is coercive in nature, the general rule is that it is mooted when the proceeding out of which it arises is terminated."). This does not mean that the District Court should erase the record of the contempt against Yashinsky, rather it means that Yashinsky no longer can currently be in active contempt of court for refusing to comply with the District Court's subpoena.

■ In addition, Yashinsky need not pay the fines that accumulated from the date of the contempt order until the statute of limitations on the underlying judgment ran because those fines no longer serve the purpose of coercing his compliance with the subpoena and requiring Yashinsky to pay the accumulated fines now would only serve to punish him for his intransigence. In *International Union, United Mine Workers of America v. Bagwell*, the Supreme Court held that "conclusions about the civil or criminal nature of a contempt sanction are properly drawn, not from 'the subjective intent of a State's laws and its courts,' but 'from an examination of the character of the relief itself.'" 512 U.S. at 826, 114 S.Ct. 2552 (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 635–36, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)) (citations omitted). Furthermore, contempts with a coercive and/or a remedial function are civil rather than criminal contempt. *See id.* In the instant case, the District Court imposed civil rather than criminal contempt on Yashinsky because the order *compensated* the plaintiff for its costs and attorney fees and imposed the daily fine in order to *coerce* Yashinsky into complying with the subpoena. A court can use its contempt power to punish a party, but using contempt to punish is criminal rather than civil contempt. *See id.* at 827–28, 114 S.Ct. 2552 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). Civil contempt cannot be converted into criminal contempt at a later stage because an individual charged with criminal contempt is entitled to the full procedural protections afforded a defendant in any other criminal proceeding. *See id.* at 826, 833, 114 S.Ct. 2552 (holding that an individual charged with criminal contempt is entitled to the full procedural protections afforded the defendant in any other criminal proceeding). For these reasons, Yashinsky is not required to pay the accumulated fines.

■ However, the expiration of the underlying judgment does not moot the compensatory award of the costs and attorney fees in the contempt order here. *See Petroleos Mexicanos*, 826 F.2d at 400 ("If ... the civil contempt proceeding is compensatory in nature, the termination of the underlying action out of which the contempt hearing arose does not moot the contempt proceeding."). Yashinsky's refusal to obey the District Court's discovery subpoena and his willful obstruction of post-judgment discovery harmed the plaintiff by causing the plaintiff to incur additional legal expenses. The expiration of the judgment does not eliminate this harm. Therefore, we hold that the portion of the contempt order awarding attorney fees and costs is not moot and remains outstanding now.

We reject plaintiff's other two arguments why the contempt order should remain in full effect. First, plaintiff argues that Yashinsky has forfeited any argument against the contempt order because he did not appeal from that order. While Yashinsky has forfeited any argument that the District Court improperly imposed contempt, his current argument only arose after the statute of limitations ran on the underlying judgment and the fine provision of the contempt order was no longer coercive. Yashinsky could not have waived this argument by failing to appeal. Second, plaintiff also argues that the Sixth Circuit's earlier decision that the contempt order should not be purged constitutes the law of the case and governs the issue currently before the court. However, when plaintiff brought that motion to purge, the ten year statute of limitations had not run and it does not appear that this court considered how the future running of the statute of limitations would affect the contempt order. Plaintiff cites to part of Yashinsky's appellate brief on his first appeal that indicates that Yashinsky tried to argue to this court that the statute of limitations was about to run on the judgment. However, this court struck portions of Yashinsky's appellate brief and did not mention this argument in its opinion, probably because Yashinsky made this argument for the first time on appeal. The issue is now properly before us because the current appeal follows his presentation of this issue to the District Court.

Finally, it does not appear that the District Court ever issued an order to set the amount of costs and attorney fees that plaintiff suffered from the time of the entry of the default judgment until issuance of the contempt order. On remand, the District Court should calculate the amount in attorney fees owed by Yashinsky to the plaintiff.

### III. Motion to Recuse

The defendant argues that the district judge should have recused herself because she made statements during hearings that indicate bias against the defendant. We reject this argument because the statements do not indicate that the district judge had any personal bias against the defendant. ·

28 U.S.C. §§ 144 and 455 govern when a judge should recuse herself. Disqualification under both sections 144 and 455 must be predicated "upon extrajudicial conduct rather than on judicial conduct," *United States v. Story,* 716 F.2d 1088, 1091 (6th Cir.1983) (quoting *City of Cleveland v. Krupansky,* 619 F.2d 576, 578 (6th Cir.1980)), and upon "a personal bias 'as distinguished from a judicial one,' arising 'out of the judge's background and association' and not from the 'judge's view of the law.'" *Id.* at 1090 (quoting *Oliver v. Michigan State Bd. of Educ.,* 508 F.2d 178, 180 (6th Cir.1974)); *see also Green v. Nevers,* 111 F.3d 1295, 1303–04 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997). The movant has the burden of convincing the court that a reasonable person would find that the bias exists. *See Rhodes v. McDannel,* 945 F.2d 117, 120 (6th Cir.1991). A court's statement to counsel that indicates frustration with counsel's behavior is not enough to establish bias or prejudice. *See id.*

Defendant Yashinsky points to statements by the district judge that the defendant believes indicate personal bias against the defendant. None of these statements indicates any bias arising from interaction outside the context of this case. The statements all concern the defendant's conduct in the case and a reasonable person would interpret the statements as expressions of the judge's view of the law.

The first three statements relied upon by the defendant arose at the hearing on Yashinsky's first motion to purge the contempt order. The District Court and Yashinsky were discussing Yashinsky's failure to pay the default judgment against him for legal malpractice, Yashinsky's refusal to participate in discovery ordered to assist the plaintiff in recovering, and Yashinsky's efforts to purge the contempt in order to regain his license to practice law. The District Court stated:

> It seems extraordinary to me that the State Bar has authorized you to represent clients here in the State of Michigan, again, and that you have been reinstated as a lawyer. This is a prime example of the worst possible thing that can happen to

a client who hires a lawyer. And you have refused, apparently, to make it straight. Soon thereafter in the hearing, the District Court stated: "The State Bar or Supreme Court has found concerning your practice of law in this state[. T]he court cannot purge contempt on the basis of representations such as this." After the defendant offered to present the District Court with an order denying his motion, the court responded that "I'll ask the victorious party to present the order."

A reasonable person would not view any of these three statements considered alone or together as evidence of personal bias against Yashinsky by the District Court. Rather, these statements express the District Court's justified opinion that the defendant's legal malpractice and efforts to avoid paying the judgment are condemnable. The second statement appears solely to express the judge's intent to deny defendant's motion. The third statement simply turns down the defendant's offer to present an order in favor of the party who prevailed on the merits.

The defendant also points to statements by the District Court at the April 1997 hearing on Yashinsky's motion to reconsider his second motion to purge and his motion asking the district judge to recuse herself. The first statement—"I believe you were seeking reinstatement in this court and that's why you wanted me to purge the contempt"—is the District Court's explanation for why she made the first statement discussed above. The District Court made the following statements in response to defendant's argument that the District Court had erroneously described his motive for asking the District Court to purge the contempt order:

I would hope, counsel, you will not be reinstated to practice in this court until you have purged yourself of this court's finding of contempt. Your total and intransigent refusal to make whole your client for the wrong-doing you've done and now your argument that after the passage of 10 years, the court must simply forgive you and purge the contempt is an argument I cannot accept.

Defendant argues that this statement misconstrued the defendant's legal arguments. Even were that true, it does not indicate personal bias.

For these reasons, we affirm the District Court's denial of Yashinsky's motion to recuse.

## IV. Conclusion

For the preceding reasons, we affirm the District Court's dismissal of the motion requesting the district judge to recuse herself. With respect to the motion to purge the contempt order, on remand the District Court should vacate as moot the coercive fine portion of the contempt order. With regard to the balance of the contempt order, the District Court should determine the amount of attorney fees and costs to plaintiff's attorneys from the date of entry of the default judgment to the date of the contempt order and enter an award plus interest from the date of the contempt order. Each party shall bear their own costs on appeal.