**In re Ernest J. DESILETS, Debtor.**

No. GM99–90364.

United States Bankruptcy Court,
W.D. Michigan.

Oct. 9, 2001.

Allan J. Rittenhouse in propria persona, Iron Mountain, Michigan.

Michael V. Maggio, Office of the United States Trustee, Grand Rapids, Michigan.

*OPINION REGARDING MOTION TO RECUSE PRESIDING JUDGE*

JAMES D. GREGG, Chief Judge.

### I. *ISSUE*

Is the presiding judge in this contested matter required to recuse himself because he has allegedly displayed bias and prejudice against a party in interest?

### II. *JURISDICTION*

■ The court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D.Mich.). This contested matter relating to possible civil ·contempt is a core proceeding because it pertains to the administration of a bankruptcy estate. 28 U.S.C. § 157(b)(2)(A). "Civil contempt proceedings arising out of core matters are themselves core matters." *In re Burkman Supply, Inc.,* 217 B.R. 223 (W.D.Mich.1998) (quoting *In re Skinner,* 917 F.2d 444, 448 (10th Cir.1990)).

### III. *FACTS AND PROCEDURAL BACKGROUND*

On May 20, 1999, Ernest J. Desilets (the "Debtor") filed his voluntary petition for relief under chapter 7 of the Bankruptcy Code. (Docket No. 1). When the case was filed, Allan J. Rittenhouse ("Rittenhouse") was serving as the Debtor's attorney.

On October 13, 1999, one of the Debtor's creditors, Delta Home Improvement, filed a Motion for Order Suspending Debtor's Counsel from Practicing before the United States Bankruptcy Court for the Western District of Michigan. (Docket No. 44). The motion alleged that Rittenhouse's representation of the Debtor was improper, because Rittenhouse was not admitted to the State Bar of Michigan and was not authorized to practice law in the state.[1]

---

1. Rittenhouse was admitted to practice law in Texas during 1992. Later that year, when Rittenhouse moved his practice from Texas to Wisconsin (near the Michigan border), his applications for admission to the State Bars of Wisconsin and Michigan were denied. In 1994, however, Rittenhouse was authorized to appear before the United States District Court and the United States Bankruptcy Court for the Western District of Michigan. *See In re*

(Docket No. 44). After notice and a hearing, this court entered its Declaratory Judgment Regarding Unauthorized Practice of Law, Status as a Bankruptcy Petition Preparer, and Granting Appropriate Relief (the "Declaratory Judgment") (Docket 123). The Declaratory Judgment stated, among other things, Rittenhouse was engaging in the unauthorized practice of law and is a bankruptcy petition preparer within the meaning of 11 U.S.C. § 110. The Declaratory Judgment did not decide the issue of whether Rittenhouse should be suspended from the practice of law before the bankruptcy court because the local bankruptcy rules mandate that such a determination must be made *en banc* by the bankruptcy judges of this district. L.B.R. 2093(a) (Bankr.W.D.Mich.).

As contemplated by the Declaratory Judgment, an *en banc* hearing was held before the bankruptcy judges of this district on August 23, 2000. During the hearing, all parties, including Rittenhouse, consented on the record to (1) an indefinite suspension of Rittenhouse from appearing before the United States Bankruptcy Court for the Western District of Michigan and (2) to an injunction preventing him from practicing law in connection with any past, present, or future bankruptcy case before the United States Bankruptcy Court for the Western District of Michigan. (Docket No. 188). This court issued its order stating the terms of this consent agreement on September 26, 2000. (Docket No. 189).

On June 4, 2001, the United States Trustee ("UST") filed its Motion for the Imposition of Civil Contempt Sanctions Upon Allan J. Rittenhouse. (Docket No. 214). In its motion the UST requested that this court impose sanctions upon Rittenhouse for violations of the court's *en banc* order and for certain conduct that

*Desilets,* 247 B.R. 660 (Bankr.W.D.Mich. 2000).

Rittenhouse engaged in prior to his suspension from practice before this court.

Rittenhouse responded to the UST's motion on June 7, 2001, by filing the Motion to Recuse Judge James D. Gregg ("Motion to Recuse") that is now before this court. (Docket No. 216). On June 12, 2001, the UST filed an objection to the Motion to Recuse. (Docket No. 219).

The Motion to Recuse alleges that several statements made by the undersigned presiding judge demonstrate bias and/or prejudice against Rittenhouse. In support of his contentions, Rittenhouse points to a letter written by this judge in response to an inquiry posed by John B. Burcham, an attorney who represented one of Rittenhouse's former clients. That letter states, in pertinent part:

> I have received your letter dated February 12, 2001, which enclosed a statement sent by Allan J. Rittenhouse to Jaydull Maunas. Based upon that statement, it appears that Mr. Rittenhouse is attempting to collect a past bill for services rendered.
>
> Please be advised that I am unable to take any action absent the filing of a pleading in the bankruptcy court. I would note that Mr. Rittenhouse may be violating the discharge injunction by attempting to collect a discharged debt. Further, a serious question exists whether Mr. Rittenhouse is able to collect a debt for services rendered when he is not an attorney.
>
> *If a party in interest brings this matter before the court by an appropriate pleading, a hearing will be scheduled*
> . . . .

(Letter from Judge James D. Gregg to John B. Burcham ("Burcham") dated February 20, 2001 (hereinafter "February let-

ter") attached to the Motion to Recuse (emphasis added)).[2]

In support of his Motion to Recuse, Rittenhouse also cites statements made by this judge during a hearing on March 27, 2001, in the case of *In re Wadeen*, Case No. GM 00–90597 ("the *Wadeen* hearing").[3] After taking testimony from one of the Wadeens, this judge observed that "Mr. Rittenhouse is not an attorney who is licensed to practice law in Michigan" and that "[a]t best, he is a bankruptcy petition preparer." Transcript of Wadeen hearing at 27 (hereinafter "Tr. at ___."). This judge further stated, based on the testimony presented, it appeared that "Mr. Rittenhouse should have disclosed that he was a bankruptcy petition planner" to the Wadeens. (Tr. at 28). However, this judge went on to explain:

> I can't award damages ... at this time because I don't have a proper vehicle before me. It strikes me under Code Section 110 about bankruptcy petition preparers that [the Wadeens] might be entitled to some damages under that. There may be some other theories under which that I could award damages to [the Wadeens]; and based on what I have heard today—only one side of the story, albeit—I'm inclined to grant relief like that in the future; *but I want to hear from the other side if there is any contest on this. I think that's fair and that is what I will require.*

(Tr. at 30) (emphasis added). At the close of the hearing, this judge further reiterat-ed his comments by stating, "I'm not awarding any damages today, but will state that if a motion is brought before me ... the hearing will be scheduled with due notice, and I'm preserving the testimony here today for purposes of that hearing." (Tr. at 31).

Rittenhouse asserts that these statements demonstrate the undersigned judge's bias and prejudice against him and that these statements constitute impermissible advisory opinions.

## IV. DISCUSSION

### A. Disqualification Based on Bias or Prejudice.

■ The circumstances under which a trial judge must recuse himself from hearing a particular case are set forth in 28 U.S.C. § 455, which provides in part as follows:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> > ....

---

2. A copy of the letter was sent to Rittenhouse, the United States Trustee, and the State Bar of Michigan to avoid any *ex parte* communication. Fed. R. Bankr. P. 9003.

3. Joshua and Cheryl Wadeen, "Wadeens," filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 25, 2000. Rittenhouse was not the attorney of record for the Wadeens' case, but he did prepare their petition, schedules and state-ment of affairs. It is alleged that several oversights and misrepresentations made by Rittenhouse ultimately led to the wrongful dismissal of the Wadeens' case. The Wadeens subsequently retained new counsel and filed a *Motion to Set Aside Order of Dismissal* on March 7, 2001. The statements cited by Rittenhouse were made during a hearing in open court to decide that motion.

28 U.S.C. § 455(a) and (b)(1).[4] Bankruptcy Rule 5004 makes it clear that bankruptcy judges are subject to the standards articulated in Section 455. FED. R. BANKR. P. 5004. In recusal actions, the "movant has the burden of convincing the court that a reasonable person would find that the bias exists." *Consolidated Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999).[5]

Disqualification under both Sections 455(a) and (b) requires that the asserted bias or prejudice must result from an extrajudicial source. *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966) (defining the "extrajudicial source" doctrine and applying the doctrine to party-initiated recusal actions under 28 U.S.C. § 144). The "extrajudicial source" rule requires that the judge's alleged bias must be based upon a "personal bias 'as distinguished from a judicial one.'" *Consolidated Rail Corp.*, 170 F.3d at 597. Personal bias is prejudice "that emanates from some source other than participation in the proceedings or prior contact with related cases" and instead "arises out of the judge's background and associations." *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999).

Based on these principles, the U.S. Supreme Court has recently stated that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555, 114 S.Ct. at 1157. *See also United States v. Howard*, 218 F.3d 556, 566 (6th Cir.2000) ("A predisposition acquired by the judge during the course of the proceedings will only constitute impermissible bias when 'it is so extreme as to display clear inability to render fair judgment.'"). The Court further explained that, even if a judge's opinion derives from a source outside of the judicial proceedings, it is not "a *sufficient* condition for 'bias or prejudice' recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice."[6]

**4.** Section 455 is not the only portion of the Code that governs disqualification of judges. As an alternative to Section 455, a party alleging bias might also seek recusal of a trial judge under 28 U.S.C. § 144. Under Section 144, the party alleging judicial bias initiates the disqualification action by filing an affidavit in conformance with the statutory requirements set forth in that section. 28 U.S.C. § 144. In this case, however, Rittenhouse's Motion to Recuse relies solely on Sections 455(a) and (b)(1).

**5.** Although Section 455(b)(1) has been characterized as a "subjective-knowledge" provision that requires a judge's actual bias or prejudice to be proven, Section 455(a) "deals with the objective appearance of partiality." *Liteky*, 510 U.S. 540, 553 n. 2, 114 S.Ct. 1147, 1156 n. 2, 127 L.Ed.2d 474 (1994). Thus under the objective standard of subsection (a), "a judge must recuse himself if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir.1999). Since "the 'objective appearance' principle of subsection (a) makes irrelevant the subjective limitation of (b)(1)," the burden of proof analysis in this contested matter is framed in terms of the more stringent, objective standard. *Liteky*, 510 U.S. at 553 n. 2, 114 S.Ct. at 1156 n. 2.

**6.** Under this reasoning, the Court suggested that the judge's statement in a World War I espionage case against German–Americans that "[o]ne must have a very judicial mind, indeed, not [to be] prejudiced against the German–Americans" because their "hearts are reeking with disloyalty" would demonstrate prejudice to an extent that recusal would be

*Liteky,* 510 U.S. at 554, 114 S.Ct. at 1157. (emphasis in original).

██ The statements made by this judge in the February letter and during the *Wadeen* hearing do not demonstrate "extrajudicial" bias or prejudice against Rittenhouse such that recusal is required under Section 455. In the February letter, this judge advised that "a serious question exists whether Mr. Rittenhouse is able to collect a debt for services rendered when he is not an attorney." Similarly, during the *Wadeen* hearing, this judge stated that "Mr. Rittenhouse is not an attorney who is licensed to practice law in Michigan" and suggested that Rittenhouse should have disclosed the fact that "at best he is a bankruptcy petition planner" to the Wadeens in that case. (Tr. at 27–28). All of these statements were based on information this judge acquired through his knowledge of proceedings against Rittenhouse that occurred in this court—specifically, the proceedings that led to the Declaratory Judgment and En Banc Order being entered against Rittenhouse. Since these statements derive from knowledge acquired by this judge during "past proceedings," and do not demonstrate "deep-seated and unequivocal antagonism that would render fair judgment impossible," they are insufficient to support Rittenhouse's Motion for Recusal. *Liteky,* 510 U.S. at 556, 114 S.Ct. at 1158.

In the February letter, this judge also noted that "Mr. Rittenhouse may be violating the discharge injunction" by attempting to collect past-due attorney's fees from a debtor. Likewise, this judge remarked during the *Wadeen* hearing that "[the

Wadeens] might be entitled to damages" for Rittenhouse's alleged violations of Section 110 of the Bankruptcy Code. (Tr. at 30). Both of these statements were based on this judge's general knowledge of bankruptcy law and did not stem from any "personal" bias against Rittenhouse. The statements merely express this judge's "view of the law," and do not suggest the type of bias or prejudice that would necessitate recusal. *Consolidated Rail Corp.,* 170 F.3d at 597. Indeed, this judge made it very clear that a hearing would take place, if requested, before *any* type of relief would be considered.

## B. *Advisory Opinions.*

██ Rittenhouse also asserts that the comments made by this judge in the February letter and during the *Wadeen* hearing constitute advisory opinions. It is clear that "a federal court [lacks] the power to render advisory opinions" because the "exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy." *United States Nat'l Bank of Oregon v. Independent Ins. Agents of America,* 508 U.S. 439, 446, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)); *1819, Ltd. v. Florida Dept. of Revenue (In re Inn on the Bay, Ltd.),* 154 B.R. 364, 367 (Bankr.S.D.Fla. 1993) ("[b]ankruptcy courts are not authorized to issue advisory opinions"). Therefore, federal courts may only render an opinion when faced with a "real and substantial controversy admitting of specific relief through a decree of a conclusive

---

required. *Liteky,* 510 U.S. at 556, 114 S.Ct. at 1157 (quoting *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921)). Other judicial statements that fall short of this degree of antagonism, even those that express "impatience, dissatisfaction, annoyance [or] ... anger," are simply not sufficient to war-

rant recusal. *Id.* *See e.g. Consolidated Rail Corp.,* 170 F.3d at 597 (trial judge's remark to an attorney accused of malpractice that "[i]t seems extraordinary to me that the State Bar has authorized you to represent clients here in the State of Michigan," did not warrant recusal).

character" and may not issue opinions "advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

■ A review of the record reveals that Rittenhouse's assertion that this judge has rendered advisory opinions is entirely unfounded. In the February letter, this judge noted that, by attempting to collect attorney's fees, "Mr. Rittenhouse may be violating the discharge injunction." The letter also acknowledged that "a serious questions exists whether Mr. Rittenhouse is able to collect a debt for services rendered when he is not an attorney." However, the letter never even approached a binding legal conclusion, and instead stated that "[i]f a party in interest brings this matter before the court by an appropriate pleading, a hearing will be scheduled." The mere expression of willingness to schedule a hearing upon the filing of an appropriate action clearly does not constitute advice on "what the law would be upon a hypothetical set of facts." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. at 241, 57 S.Ct. at 464 (1937). Consequently, the statements contained in the letter do not constitute as impermissible advisory opinions.

Similarly, the court did not issue an advisory opinion during the *Wadeen* hearing. At the close of that proceeding, this judge commented that the Wadeen, might be entitled to damages under Section 110 of the Bankruptcy Code and stated that he was "inclined to grant relief like that in the future." (Tr. at 30). This judge went on to say that "I want to hear from the other side [if] there is any contest on this." (Tr. at 30). To conclude that matter, this judge explained that "I'm not awarding damages today, but will state that if a motion is brought . . . the hearing will be scheduled with due notice." (Tr. at 31). Again, statements such as those do not constitute a binding legal opinion on any issue and are not advisory opinions.

## V. *CONCLUSION*

■ The impartiality and integrity of judges is essential to the proper functioning of the judiciary system. However, in ruling on the Motion to Recuse, this court is also cognizant that the efficient administration of justice would be seriously frustrated if recusal of trial judges is undertaken too freely.[7] Thus, consideration of recusal motions requires a delicate balancing of the need to achieve complete impartially with the avoidance of excessive disqualification of trial judges. *See* Seth E. Bloom, *Judicial Bias and Financial Interest as Grounds for Disqualification of Federal Judges,* 35 Case W. Res. L. Rev. 662, 665 (1985).

The statements made by the undersigned judge in this case were made in accordance with this judge's knowledge of past proceedings involving Rittenhouse and were consistent with this judge's view of bankruptcy law. As such, the statements do not demonstrate "extrajudicial" bias or prejudice that would support a Motion to Recuse under Section 455. Nor do the statements made by this judge represent impermissible advisory opinions that would require recusal. A separate order shall be entered accordingly.

---

7. With regard to recusal under Section 455, Congress has warned that "in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision." *See* H.R. REP. NO. 93–1453 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355.