**SRI INTERNATIONAL, INC.,
Plaintiff–Appellee,**

v.

**ADVANCED TECHNOLOGY LABORA-
TORIES, INC. and ATL Washington,
Inc., Defendants–Appellants.**

No. 96–1437.

United States Court of Appeals,
Federal Circuit.

Oct. 23, 1997.

Harold J. McElhinny, Morrison & Foerster, LLP, San Francisco, CA, argued for plaintiff-appellee. With him on brief were Tamu K. Sudduth, San Francisco, CA, and Jana G. Gold, Palo Alto, CA.

Paul C. Saunders, Cravath, Swaine & Moore, New York City, argued for defendants-appellants. With him on briefs were Stephen B. Judlowe and William G. Todd, Hopgood, Calimafde, Kalil & Judlowe.

Before NEWMAN, MICHEL, and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

This is the damages phase of litigation between SRI International ("SRI") and Advanced Technology Laboratories and its subsidiary ATL Washington (together "ATL"). This court had sustained the validity and enforceability of United States Patent No. B1–4,016,750 (the '750 patent) and affirmed that certain claims were infringed by ATL. *SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.,* 45 F.3d 443 (Fed.Cir.1994) (Table). Following trial of the remaining issues, the district court assessed compensatory damages at a royalty rate of 3% of infringing sales, found that the infringement was willful, trebled the damages award in accordance with 35 U.S.C. § 284, and awarded attorney fees under 35 U.S.C. § 285.[1] ATL appeals the judgment, challenging the finding of willful infringement, the enhancement of damages, and the sufficiency of the notice of infringement under 35 U.S.C. § 287(a). We affirm the judgment of the district court.

## I

35 U.S.C. § 284 of the Patent Act authorizes the court to "increase the damages up to three times the amount found or assessed." The statute prescribes no standards for such increase, but precedent establishes that a person having knowledge of an adverse patent has an affirmative duty to exercise due care to avoid infringement of a presumptively valid and enforceable patent. The statute thus recognizes the tortious nature of patent infringement and the public interest in a stable patent right, for enhanced damages are not compensatory but punitive. *See Beatrice Foods Co. v. New England Printing and Lith. Co.,* 923 F.2d 1576, 1580, 17 USPQ2d 1553, 1556 (Fed.Cir.1991) (enhanced damages are a penalty for culpable conduct).

■ Although various criteria have been stated for determining "willful infringement," which is the term designating behavior for which enhanced damages may be assessed, the primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was

---

1. *SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.,* No. C91–2191 WHO (N.D.Cal. May 17, 1996).

found to be infringing. The law of willful infringement does not search for minimally tolerable behavior, but requires prudent, and ethical, legal and commercial actions. Thus precedent displays the consistent theme of whether a prudent person would have had sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated. *See, e.g., Hoechst Celanese Corp. v. BP Chem. Ltd.,* 78 F.3d 1575, 1583, 38 USPQ2d 1126, 1132 (Fed. Cir.1996); *American Med. Sys. v. Medical Eng'g Corp.,* 6 F.3d 1523, 1530, 28 USPQ2d 1321, 1325 (Fed.Cir.1993); *Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1428, 8 USPQ2d 1323, 1331–32 (Fed.Cir.1988); *Yarway Corp. v. Eur-Control USA, Inc.,* 775 F.2d 268, 277, 227 USPQ 352, 358 (Fed.Cir.1985); *Stickle v. Heublein, Inc.,* 716 F.2d 1550, 1565, 219 USPQ 377, 388 (Fed.Cir.1983).

■ A factor to be considered is whether the adjudged infringer relied on legal advice. When this defense is raised the court may consider the nature of the advice, the thoroughness and competence of the legal opinion presented, and its objectivity. The court will determine whether the advice of noninfringement or invalidity or unenforceability could have reasonably been relied on, and whether, on the totality of the circumstances, exculpatory factors avert a finding of willful infringement. The totality of the circumstances may include not only such aspects as the closeness or complexity of the legal and factual questions presented, but also commercial factors that may have affected the infringer's actions. Aspects in mitigation, such as whether there was independent invention or attempts to design around and avoid the patent or any other factors tending to show good faith, should be taken into account and given appropriate weight.

■ Willful infringement is a question of fact, *American Med. Sys.,* 6 F.3d at 1530–31, 28 USPQ2d at 1325–26, and must be established by clear and convincing evidence, for "the boundary between unintentional and culpable acts is not always bright." *Pall*

*Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1221, 36 USPQ2d 1225, 1232 (Fed.Cir. 1995). Since the issue of willfulness not only raises issues of reasonableness and prudence, but is often accompanied by questions of intent, belief, and credibility, appellate review requires appropriate deference to the special role of the trial court in making such determinations. *Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1571, 38 USPQ2d 1551, 1555 (Fed.Cir.1996); *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.,* 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986). Thus a finding of willful infringement will be sustained unless the reviewing court has a definite and firm conviction that the trier of fact erred. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1057, 32 USPQ2d 1017, 1024 (Fed.Cir.1994).

**A**

■ The district court discussed the opinions of counsel in evidence on behalf of ATL, and the five years of correspondence between ATL and SRI. The court observed that ATL had knowledge of possible infringement of the '750 patent since at least April 1984, when two in-house engineers expressed their concerns in separate memoranda stating, for example, "I believe that we probably are infringing on Patent # 4,016,750 ... [explaining technology and models]." The court discussed the written opinions of three lawyers for ATL: (1) a letter dated June 30, 1986 written to SRI by Sanford Asman, house patent counsel for ATL's then parent company Squibb; (2) an opinion dated December 13, 1988 of outside patent counsel Michael Toner; and (3) a letter dated May 23, 1990 and an opinion of July 15, 1991 of W. Brinton Yorks, ATL's house counsel.

**1. The Asman Letter**

Mr. Asman responded to a letter of May 15, 1986 from Urban Faubion of SRI to Dale Conrad, president of ATL. Mr. Faubion wrote that ATL's Ultramark 4 and 8 models may infringe the '750 patent, and offered a nonexclusive license. Mr. Asman replied

that ATL does not require a license because "[it does] not make use of a unitary, continuously variable, passband filter. Instead, our units make use of a pair of filters which act in series, each of which is made up of four discrete filters which are individually selected."

It is not disputed that this technologic information in the Asman letter was incorrect. The evidence at trial and the later legal opinion of Mr. Toner made clear that ATL's Ultramark 4 did indeed use a unitary, continuously variable, passband filter. ATL states that such misstatement was excusable because ATL need not "volunteer proprietary information to SRI." The district court did not view this explanation as converting the Asman letter into a good faith statement of non-infringement advice on which ATL could rely.

The district court described the Asman letter as "conclusory and woefully incomplete" as an opinion of counsel, lacking both legal and factual analysis. The court found the Asman letter insufficient to meet the standard of due care appropriate to serve as an exculpatory opinion of counsel. We do not discern clear error in this finding.

## 2. The Toner Opinion

Some eighteen months later SRI again contacted ATL, questioning the technology used by ATL and again offering a license to the '750 patent. Of record is the opinion of Michael G. Toner, who advised ATL that "we have concluded that the Ultramark 4 system may infringe the patent" but that the patent is invalid for obviousness and unenforceable for inequitable conduct.

Mr. Toner's conclusion of invalidity was based on a patent to Weighart, that SRI had presented to the patent office with an earlier request for reexamination, and upon which the patent examiner had reconfirmed the '750 patent. The district court discussed at length whether ATL could justifiably have relied on this advice of invalidity. The court observed that Toner simply repeated the ex-

aminer's arguments concerning Weighart, which during reexamination had been resolved in SRI's favor. The court found the Toner conclusion of invalidity to be lacking in both substance and analysis.

The district court also discussed Toner's comment that SRI had made a "material misrepresentation," during reexamination, of the technical content of the Weighart reference. The court observed that "Toner gives no evidence whatsoever to support this allegation, other than the mere fact that his interpretation of the Weighart art differs from that propounded by SRI and accepted by the examiner at the reexamination proceeding. Such a difference of opinion is a slender reed on which to hang a very serious allegation." The court called Toner's statement "offhand," and found Toner's allegation insufficient to support a reasonable belief that the '750 patent would be held unenforceable for inequitable conduct.

In connection with Toner's opinion that there may be infringement of the '750 patent by the Ultramark 4 system, Toner stated that a more extensive engineering study was needed concerning the "tracking" limitation in the claims. He stated that "use of the ULTRAMARK 4 system comes within the language of steps 1–3 of claim 20," and that "in general, the dependent claims will be infringed by the ULTRAMARK 4 to the same extent as the independent claims." The district court observed that nothing in the record showed that additional technical information was ever provided as Toner requested, and that there was no subsequent or follow-up opinion.

The district court found that the Toner opinion was inadequate to support a good faith belief by ATL in the invalidity or unenforceability of the '750 patent, particularly in view of Toner's opinion on the issue of infringement. The court mentioned Toner's participation in ATL's plan of delay and non-responsiveness in interaction with SRI. On the totality of the circumstances, we do not discern clear error in the court's finding that the Toner opinion did not avert willfulness of the infringement.

### 3. The Yorks Documents

Mr. Yorks was legal vice-president of ATL. In evidence is a letter to SRI wherein Mr. Yorks stated that the '750 patent was not being infringed because none of ATL's products "employ bandpass filter means having a continuously variable, unitary passband." This statement is reminiscent of the Asman letter, four years earlier. Yorks also told SRI that the '750 patent was unenforceable for inequitable conduct based on the arguments presented to distinguish the Weighart reference during reexamination. The district court found that the Yorks letter simply repeated the prior Asman and Toner opinions and was subject to the same inadequacies, and that this advice "could [not] have been reasonably relied upon by ATL."

A year later and two days before SRI's infringement suit was filed, Yorks sent an opinion letter to ATL management, stating that he had found an invalidating reference. He wrote that U.S. Patent No. 2,590,822 to Minton anticipated several claims of the '750 patent, and that Minton together with Weighart rendered the other claims invalid for obviousness. The Minton reference, which issued in 1952 and relates to seismic prospecting, had been discussed in the liability trial; on appeal the Federal Circuit noted that Minton was held on reexamination to be not anticipating and that the examiner found that the field of seismic prospecting was not analogous art.

The district court found that the Yorks opinion was "too little, too late, coming seven years after ATL began infringing the '750 patent." The opinion was found to be "not objective," the court stating that it "appears to be an opinion letter to have been produced as a 'protective device' in preparation for litigation, rather than as 'a genuine effort to determine before infringing whether the patent was invalid,'" quoting *In re Hayes Microcomputer Prod. Patent Litig.*, 982 F.2d 1527, 1544, 25 USPQ2d 1241, 1254 (Fed.Cir. 1992). The court concluded that the Yorks opinion was "insufficient to satisfy the duty of due care."

■ ATL assigns clear error to the district court's view of the Yorks documents. ATL is correct that there is no rule excluding reliance on house counsel opinions. *See Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1573–76, 9 USPQ2d 1273, 1282–83 (Fed.Cir.1988); *Underwater Devices Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1390, 219 USPQ 569, 576 (Fed.Cir. 1983). However, an opinion from house counsel issued many years after the infringement began, on the eve of litigation, is subject to no less scrutiny than would be given such an opinion if received from outside counsel.

ATL states that "ongoing consultation with a patent attorney is highly probative evidence of good faith." Consultation with counsel is indeed relevant evidence, as is the product of that consultation, its thoroughness, its objectivity, and its substance. To serve as exculpatory legal advice the opinion of counsel is viewed objectively, to determine whether it was obtained in a timely manner, whether counsel analyzed the relevant facts and explained the conclusions in light of the applicable law, and whether the opinion warranted a reasonable degree of certainty that the infringer had the legal right to conduct the infringing activity. *See Westvaco Corp. v. International Paper Co.*, 991 F.2d 735, 745, 26 USPQ2d 1353, 1360 (Fed.Cir.1993).

Although ATL's president testified that he in fact relied on the Toner and Yorks opinions, the district court concluded that such reliance was not reasonably justified. The court observed that Toner advised ATL of infringement, and that the Toner and Yorks opinions were deficient in significant ways. We do not discern clear error in the district court's finding that ATL did not exercise due care to avoid infringing a valid and enforceable patent.

### B

ATL proposes that even if its activities were insufficiently justified when infringement began, after ATL received the Toner opinion that the '750 patent was probably

invalid or unenforceable, its continuing infringement could no longer be deemed willful. Therefore, ATL argues that the district court improperly assessed enhanced damages for the period after ATL received the Toner opinion.

Prudent behavior generally requires that competent legal advice was obtained before the commencement of the infringing activity. *Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580, 24 USPQ2d 1321, 1339 (Fed.Cir.1992); *Spindelfabrik Suessen–Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1084, 4 USPQ2d 1044, 1051 (Fed.Cir.1987). All of the legal opinions and letters before the court were produced after the infringing activity started and during its continuance. We need not decide whether willful infringement can ever be purged by subsequent legal advice, for we have affirmed the district court's conclusion that the counsel opinions of record did not merit a reasonable confidence in the noninfringement or invalidity or unenforceability of the '750 patent. The record shows no technology changes in the Ultramark 4, even after Toner's statement about infringement or after Yorks asked outside counsel to advise on changes that would avoid infringement. There was no evidence to support ATL's position that willfulness of the infringement had been cured.

ATL also states that the district court erroneously required that to avoid willfulness the opinion of counsel must advise that there was both invalidity and noninfringement. We do not see this requirement in the court's opinion.

## C

■ The district court found that ATL "deliberately prolonged its dealings with SRI, imposing delay after delay, in order to fend off SRI as long as possible and allow its profitable infringement of the ['750] patent to continue." The record evidences delays, silences, misinformation, non-responses, and various other means of "putting SRI off as long as possible." The district court, reviewing this conduct, described it as "outrageous." Commercial conduct may be relevant in determining whether the infringer exercised the due care owed to a patent holder. *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1580, 1 USPQ2d 1081, 1091–92 (Fed.Cir.1986) (considering the totality of the circumstances).

The district court concluded that ATL did not have an adequate basis for believing that it had the right to practice the invention covered by the '750 patent. Clear error has not been shown in the district court's findings. We affirm that ATL's actions, viewed in the entirety of the circumstances, constituted willful infringement.

## II

■ When willful infringement or bad faith has been found, the remedy of enhancement of damages not only serves its primary punitive/deterrent role, but in so doing it has the secondary benefit of quantifying the equities as between patentee and infringer. *See S.C. Johnson & Son*, 781 F.2d at 201, 228 USPQ at 369 (the decision whether to increase the damages, and the amount thereof, "provides an opportunity for the trial court to balance equitable concerns").

The history of enhancement of damages demonstrates a long-standing legislative policy. In the Patent Act of 1793 all patent infringement damages were required to be enhanced at least threefold. The Patent Act of 1836 made increased damages discretionary, recognizing the injustice of treating all infringement damages the same. *See Seymour v. McCormick*, 57 U.S. (16 How.) 480, 488–89, 14 L.Ed. 1024 (1853) (in increasing damages the merits of each case should be considered). Thereafter enhancement of damages was consigned to the court's discretion, the statutes varying the ceiling between twofold and threefold.

■ As precedent has evolved, when willful infringement or bad faith has been found, the enhancement of damages and the amount

thereof remains within the discretion of the court. *See National Presto Indus. Inc. v. West Bend Co.*, 76 F.3d 1185, 1193–94, 37 USPQ2d 1685, 1690–91 (Fed.Cir.1996); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 183, 30 USPQ2d 1462, 1466 (Fed.Cir.1994). Thus appellate review is conducted on the criteria of abuse of discretion; that is, whether the decision to enhance damages and the amount of any enhancement was grounded on clearly erroneous findings of fact, an incorrect conclusion of law, or a clear error of judgment. *See Sensonics*, 81 F.3d at 1573, 38 USPQ2d at 1557.

The principal considerations in enhancement of damages are the same as those of the willfulness determination, but in greater nuance as may affect the degree of enhancement. Thus egregiousness of the infringer's conduct may receive greater emphasis, as may any mitigating factors. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826–27, 23 USPQ2d 1426, 1435–36 (Fed.Cir.1992) (collecting factors). All aspects relevant to a particular case should be given the weight appropriate to their substance. A broad range of discretion is reposed in the trial court, founded on this need to weigh and balance multiple factors in determining a just remedy.

ATL asserts that the district court failed to consider the important mitigating factor that ATL independently developed its infringing device. We are not persuaded that the court did not consider this factor, along with others. The court mentioned that ATL knew of SRI's patent while the device was still being developed, and was warned of infringement by in-house engineers. The court found that ATL did not have adequate basis for a good faith belief that the '750 patent would be held invalid or unenforceable or not infringed. The court found that ATL

engaged in infringing activities for five years after it had been contacted by SRI, and that ATL's conduct with respect to SRI was outrageous. Although bad faith need not be found, *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 902, 229 USPQ 525, 529 (Fed.Cir. 1986), the court may consider all of the evidence in determining the extent of enhancement of damages.

Reviewing the considerations before the district court, we conclude that the court did not abuse its discretion in its decision to treble the 3% royalty.

## III

ATL argued at trial that it was not given adequate notice of infringement in terms of 35 U.S.C. § 287(a),[2] and that the accrual of damages should be limited to the date suit was filed. Section 287(a) relates to informing the interested public of the patent status of an article in commerce, and permits either constructive notice by marking the article with the patent number, or actual notice to the infringer. SRI's licensee at the time did not mark the device. Absent marking, damages may be recovered only after actual notice is given.

For actual notice, attention was focused on the May 15, 1986 letter from SRI's patent counsel to ATL's president, mentioned in Part I *ante*. The letter included a copy of the '750 patent and the reexamination certificate, identified two ATL models that SRI stated may infringe the '750 patent, and offered a nonexclusive license. The letter stated:

> We have noted from your advertising literature that [ATL] products Models Ultramark 4 and 8 may infringe one or more claims of U.S. Patent No. 4,016,750, Philip

**2.** 35 U.S.C. § 287(a) Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, ... In the

event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

S. Green, ULTRASONIC IMAGING METHOD AND APPARATUS. A copy of the patent and its associated reexamination certificate are enclosed. The patent is assigned to [SRI] and nonexclusive licenses are extant.

SRI would be pleased to provide [ATL] with a nonexclusive license under the patent. For your information, counterpart applications are on file in a number of countries outside the United States. If you are of the opinion that you do not need a license from SRI, it would be helpful if you could give us some insight into your reasons.

ATL argued that this letter did not satisfy the notice requirement of § 287(a) because it did not meet the requirements of creating an actual controversy under the Declaratory Judgment Act, 28 U.S.C. § 2201. ATL stated that since SRI did not make an unqualified charge of infringement and did not threaten ATL with suit, the consequence of this cautious language is that ATL was not "notified of the infringement" in terms of § 287(a).

The criteria for actual notice under § 287(a) are not coextensive with the criteria for filing a declaratory judgment action. These statutory purposes are distinct, serve different policies, and are governed by different laws. The requirement of actual notice under § 287(a) is designed to assure that the recipient knew of the adverse patent during the period in which liability accrues, when constructive notice by marking is absent. Actual notice may be achieved without creating a case of actual controversy in terms of 28 U.S.C. § 2201.

 It is not controlling whether the patentee threatens suit, demands cessation of infringement, or offers a license under the patent. *See Ralston Purina Co. v. Far–Mar–Co., Inc.,* 772 F.2d 1570, 1577, 227 USPQ 177, 181 (Fed.Cir.1985) ("The offering of a license is actual notice."). Although there are numerous possible variations in form and content, the purpose of the actual notice requirement is met when the recipient

is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer. Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise.

ATL states that SRI simply sent it a form letter, pointing out that similar letters were sent to four other manufacturers of ultrasound devices. The district court found that the SRI letter to ATL was not "merely informational," distinguishing it from the letters that SRI sent to companies worldwide with an interest in ultrasound, offering technical information and a prototype filter embodying the invention in the '750 patent, and inviting inquiries. The court referred to the two similar types of letters in *Amsted,* 24 F.3d at 187, 30 USPQ2d at 1469, the first of which simply mentioned the existence of the patent, and the second of which demanded cessation of infringing activity. Although the SRI letter offered a license instead of demanding that ATL "cease and desist," a patentee whose goal is licensing does not defeat actual notice by offering a license.

The district court held that the SRI letter of May 15, 1986, stating that U.S. Patent No. 4,016,750 may be infringed by certain devices made by ATL and offering a license, met the notice requirement of § 287(a). We discern no clear error in the application of § 287(a) to the facts of this case. When the patentee has notified a perceived infringer of a specified patent that a license may be needed, the sufficiency of the notice under § 287(a) is not negated if the proposed remedy is a license instead of cessation of activity. We sustain the district court's ruling.

**Costs**

Costs under Fed. Cir. R. 39 to SRI.

*AFFIRMED*