**STRYKER CORPORATION, Plaintiff,**

v.

**DAVOL, INC., Defendant.**

**No. 4:96–CV–191.**

United States District Court,
W.D. Michigan,
Southern Division.

July 29, 1999.

Charles E. Ritter, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, for plaintiff.

Thomas F. Blackwell, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, Peter C. McCabe, Winston & Strawn, Chicago, IL, for defendant.

## MEMORANDUM OPINION FINDING DEFENDANT IN CONTEMPT

McKEAGUE, District Judge.

On November 20, 1998, the jury returned a verdict in favor of plaintiff in this patent infringement action. Consistent with the verdict, judgment was entered on December 2, 1998, awarding Stryker Corporation $1,510,647 in damages and prejudgment interest. This award has subsequently been enhanced, pursuant to 35 U.S.C. § 284, by the amount of $755,,323.50, due to the willfulness of defendant's infringing conduct. On December 23, 1998, the Court issued a permanent injunction prohibiting further infringement by defendant Davol, Inc. The Court has also awarded Stryker supplemental damages in the amount of $265,176.80, due to Davol's continuing infringing conduct between the date of the jury's verdict and the entry of the permanent injunction.

Now before the Court is Stryker's motion to find Davol in contempt for continuing infringement of its patent rights after issuance of the permanent injunction. It is undisputed that from December 31, 1998 to March 11, 1999, Davol manufactured and marketed a revised Hydro–Surg Plus suction-irrigator. Stryker contends the modifications made in the revised device are insubstantial and that it contains all elements of claim 14 of the '402 patent. By making and selling the revised Hydro–Surg Plus, Davol is said to have infringed claim 14 and violated the permanent injunction.

### I

 Davol has objected to this procedure, contending a contempt proceeding is not an appropriate forum in which to determine whether the redesigned device infringes. The question whether a contempt proceeding is appropriate or whether, in the alternative, the infringement question should be resolved in a separate infringement action, depends on a comparison of the original infringing product and the redesigned device. *Additive Controls & Measurement Systems, Inc. v. Flowdata,* *Inc.,* 154 F.3d 1345, 1349 (Fed.Cir.1998). "If the differences are such that 'substantial open issues' of infringement are raised by the new device, then contempt proceedings are inappropriate." *Id.*

Applying this standard, the Court concluded that "substantial open issues" are not presented by Stryker's motion to find Davol in contempt and overruled Davol's objection in an order dated March 18, 1999. Moreover, to ensure the Court's contempt power is sparingly and prudently used as a shield and not as a sword, see *Arbek Mfg. Inc. v. Moazzam,* 55 F.3d 1567, 1570 (Fed.Cir.1995), the Court established a briefing and hearing schedule, affording Davol the opportunity to show it had made a good faith effort to modify and requiring Stryker to show infringement by clear and convincing evidence. The completion of this procedure has confirmed that this contempt proceeding is the appropriate forum.

### II

The primary substantive question posed by Stryker's motion is whether the revised Hydro–Surg Plus includes, in the language of claim 14, a spike having means for independently supporting the pumping unit from an irrigation liquid supply container. Davol contends the redesigned device has a narrower smooth spike which is not reliably capable of independently supporting the pumping unit. For this reason, Davol explains, the revised Hydro–Surg Plus is equipped with clips, which support the pumping unit when they are attached to an I–V pole. The revised Hydro–Surg Plus was also provided to customers with set-up instructions directing them to use the clips and not to rely on the spike to support the pumping unit. These modifications, Davol contends, evidence its good faith effort to avoid infringement.

Stryker responds with "pull force" test results demonstrating that the spike of the revised Hydro–Surg Plus is capable of independently supporting the pumping unit—albeit less securely than the spike of the original Hydro–Surg Plus. Moreover,

Stryker has adduced unrefuted evidence that the revised device has been and is being used in hospital operating rooms without the clips; that is, with the spike providing the sole means of support.

■ Stryker has thus shown by clear and convincing evidence that the revised Hydro–Surg Plus includes a spike having means for independently supporting the pumping unit. That the more slender spike of the revised device does not fit as securely and does not support the pumping unit as reliably does not negate the fact that the revised spike is able to and is used to independently support the pumping unit. An accused product that "imperfectly" or "sometimes, but not always" embodies a claimed element or method nonetheless infringes. *Bell Communications Research Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 622–23 (Fed. Cir.1995).

■ Comparing the revised Hydro–Surge Plus with the original device reveals that none of the modifications represents a substantial change. The narrowing of the spike, the 6″ tubular extension of the spike, and the addition of the I–V pole clips are all cosmetic changes that do not materially affect the functioning of the device. Such modifications do not avoid infringement. "Adding features to an accused device will not result in noninfringement if all the limitations in the claims, or equivalents thereof, are present in the accused device." *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1057 (Fed.Cir.1988), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

The accused revised device is not materially different, therefore, from the original Hydro–Surg Plus which has been found to infringe Stryker's patent rights. It follows that Davol's manufacture and marketing of the revised Hydro–Surg Plus from December 31, 1998 to March 11, 1999 also infring-

ed Stryker's patent rights and violated the permanent injunction.

■ Moreover, the Court finds Davol's violation of the permanent injunction contemptuous. Davol's contention that it made a good faith effort to modify the accused product so as to comply with the injunction is to no avail. Good faith is no defense for failure to comply with an injunctive order. *Peppers v. Barry*, 873 F.2d 967, 968 (6th Cir.1989).[1] Instead, the Court must determine whether Davol "took all reasonable steps within its power to comply with the Court's order." *Id.* at 969. For the reasons discussed more fully in part IV below, the Court concludes Davol did not take all such reasonable steps. By manufacturing and marketing the revised Hydro–Surg Plus, Davol acted in contempt of the Court's permanent injunction.

### III

■ The Court has broad discretion to determine how best to enforce its injunction. *Additive Controls*, 154 F.3d at 1349. In this civil contempt proceeding, the purpose of any such sanction imposed on Davol must be remedial and/or coercive, not punitive. *Consolidated Rail Corp. v. Yashinsky*, 170 F.3d 591, 596 (6th Cir. 1999); *United States v. Bayshore Assoc., Inc.*, 934 F.2d 1391, 1400–01 (6th Cir.1991). To the extent the sanction serves a remedial function, it should compensate Stryker for damages caused by Davol's noncompliance. *Bayshore*, 934 F.2d at 1400.

■ Damages for patent infringement, which is the *sine qua non* of Davol's contempt, see *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 803 F.2d 1170, 1175 (Fed.Cir.1986), are usually based on determination of the patentee's lost profits, but should in any event be no "less than a reasonable royalty for the use made of the invention by the infringer."

---

1. Although this contempt proceeding arises in a patent infringement suit, governed generally by Federal Circuit law, exercise of the Court's contempt power is generally governed by the

law of the Sixth Circuit. See *Graves v. Kemsco Group, Inc.*, 864 F.2d 754, 755 (Fed.Cir. 1988).

35 U.S.C. § 284; *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed.Cir. 1995). Here, the parties have argued variously that Stryker's damages should be based either on Davol's gross profits or net profits or on the 20% reasonable royalty established by the jury.

The parties' estimates of Davol's gross profits ($683,970) and net profits ($143,558) are speculative and widely variant. Applying the 20% reasonable royalty adopted by the jury to the gross revenues proceeding from Davol's sales of the revised Hydro–Surg Plus yields a product, with interest, of $373,788. In the opinion of the Court, this amount reasonably compensates Stryker for the injury caused by Davol's infringing conduct. It is based on a fair measure of damages consistently applied to compensate Stryker for Davol's earlier infringing activities as well. Accordingly, Stryker shall be awarded compensatory damages in the amount of $373,788.

## IV

Further, contending Davol's post-injunction infringing conduct was willful, Stryker moves the Court to treble its damages pursuant to 35 U.S.C. § 284 and award it attorney fees and costs pursuant to 35 U.S.C. § 285.

Under § 284, the Court is authorized, in its discretion, to treble the damages awarded to compensate for patent infringement. Indeed, willful infringement reflecting flagrant contempt for the Court's permanent injunction may support an award of treble damages and attorney fees. *Spindelfabrik Suessen–Schurr v. Schubert & Salzer*, 903 F.2d 1568, 1578 (Fed.Cir.1990).

In exercising its discretion, the Court must evaluate Davol's culpability with consideration of the totality of the circumstances. *Johns Hopkins University v. Cellpro, Inc.*, 152 F.3d 1342, 1365 (Fed.Cir.1998); *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed.Cir.1996). Generally, a finding of willfulness requires a showing that the infringer acted in disregard of the patent and without sound reason to believe

the patent was not infringed or was invalid or unenforceable. *SRI Int'l, Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1464–65 (Fed.Cir.1997). "The extent to which the infringer disregarded the property rights of the patentee, the deliberateness of the tortious acts, or other manifestations of unethical or injurious commercial conduct, may provide grounds for a finding of willful infringement and the enhancement of damages." *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1583 (Fed.Cir.1996). A finding of willful infringement, which must be supported by clear and convincing evidence, authorizes, but does not mandate enhancement of damages. *Johns Hopkins*, 152 F.3d at 1365.

Davol contends Stryker has failed to show willful infringement by clear and convincing evidence. During the period in question, the validity and enforceability of Stryker's patent had already been established. The only available defense, therefore, requires Davol to show there was sound reason to believe the patent was not infringed by the revised Hydro–Surg Plus. Davol maintains it attempted in good faith to "design around" the patent based on advice of competent patent counsel.

"A critical factor in evaluating the effect of an opinion of counsel on willfulness is the reasonableness of the party's reliance thereon." *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 793 (Fed.Cir.1995). The test is whether a reasonable person in Davol's position could, based on the opinion of counsel, prudently market the revised Hydro–Surg Plus with confidence that this Court might reasonably hold the patent not infringed. *Id.* Having carefully reviewed the opinion of patent attorney Michael J. Sweedler in light of the history of this litigation, the Court finds Davol's reliance on it as justification for its actions to be clearly unreasonable.

In his letter opinion of December 15, 1998, Mr. Sweedler acknowledged that the spike of the revised Hydro–Surg Plus is capable of independently supporting the

pumping unit in a laboratory environment. Without citing any factual or empirical support, however, he stated that the spike "cannot do so reliably under conditions normally encountered in an operating room." This critical part of Mr. Sweedler's opinion appears to be based on pure supposition. In the hearing conducted on March 15, 1999, Davol conceded it had marketed the redesigned device without having first tested its performance under normal operating room conditions and without having investigated whether consumers would actually follow instructions provided with the product.

Supposing that the revised Hydro–Surg Plus could theoretically be used, but was not likely to be used, in an infringing manner, Mr. Sweedler briefly discussed case law addressing the question whether mere capability of infringing use is sufficient to establish infringement. He identified analogous case law answering the question both in the affirmative and in the negative. Despite the closeness of the question, he concluded the Court "should" hold that the theoretical possibility of infringing use does not constitute infringement. Yet, he acknowledges that Stryker might challenge marketing of the revised Hydro–Surg plus; that this Court would likely consider the challenge in a contempt proceeding; and that there would be some risk of contempt sanctions—although he considered the risk "to be well within acceptable limits."

Thus, Davol acted on Mr. Sweedler's opinion despite knowing (1) that one of his premises was unverified and suspect; (2) that the relevant case law was equivocal; (3) that this Court would probably address Stryker's anticipated challenge as a possible contempt of Court; and (4) that a finding of contempt was a possibility. To assume such a risk under these circumstances is not a prudent course of action by a reasonable person. In view of the fact that Davol was already subject to an adverse patent infringement judgment and permanent injunction, Mr. Sweedler's opinion, read carefully and prudently, can hardly have instilled confidence in the no-

tion that marketing of the revised device would be found to be non-infringing.

The law of willful infringement does not condone "minimally tolerable behavior," but requires prudent and ethical conduct. *SRI Int'l*, 127 F.3d at 1465. Because Davol's conduct did not measure up to this standard, the Court finds its persisting infringing conduct to have been willful.

The Court further finds that enhanced damages are warranted. In determining the appropriateness of enhancement, the Court is afforded broad discretion, considering the same factors that inform the willfulness determination. *Id.* at 1469. Even after the jury returned its verdict finding Davol liable for infringement, Davol continued its infringing conduct until expressly enjoined. After the injunction issued, Davol continued marketing the Hydro–Surg Plus, with minor cosmetic modifications, until Stryker commenced this contempt proceeding and exposed the fallacy in Davol's position. Davol's conduct has forced Stryker to be vigilant in enforcing its rights, at considerable expense. Enhancement of damages is necessary to fully compensate Stryker and deter future disregard of Stryker's patent rights.

Under 35 U.S.C. § 284, the Court is authorized in its discretion to treble compensatory damages. Considering all the circumstances, especially Davol's manifest contumacy, the Court finds that trebling of Stryker's compensatory damages is appropriate. See *Spindelfabrik*, 903 F.2d at 1578 ("flagrant contemptuous conduct" justifies trebling of damages). Accordingly, Stryker's compensatory damages in the amount of $373,788 shall be trebled, yielding a total contempt damages award of $1,121,364.

Stryker also seeks recovery of attorney fees and costs. Inasmuch as the purpose of the civil contempt sanction is essentially remedial and compensatory, fees and costs are properly recoverable. Moreover, Davol's willful infringement, despite the permanent injunction, justifies an

"exceptional case" finding under 35 U.S.C. § 285 and an award of attorney fees and costs, because it would otherwise be grossly unjust to force Stryker to bear these expenses. See *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1360 (Fed.Cir.1990), *cert. denied,* 498 U.S. 851, 111 S.Ct. 142, 112 L.Ed.2d 109 (1990).

Stryker claims $119,505.50 in attorney fees and $26,057.02 in costs. Davol objects, contending these amounts are unreasonable. The Court remains unpersuaded. In the interest of full compensation, Stryker shall be awarded the amounts claimed.

A judgment order consistent with this opinion shall issue forthwith.

### CONTEMPT JUDGMENT ORDER

In accordance with the Court's memorandum opinion of even date,

**IT IS HEREBY ORDERED** that defendant Davol, Inc. is **ADJUDGED** to have willfully infringed the patent rights of plaintiff Stryker Corporation in violation and contempt of the Court's permanent injunction dated December 23, 1998; and

**IT IS FURTHER ORDERED** that plaintiff Stryker is **AWARDED** compensatory damages, trebled by the Court pursuant to 35 U.S.C. § 284, in the amount of $1,121,364; and

**IT IS FURTHER ORDERED** that plaintiff Stryker is **AWARDED** $119,-505.50 in attorney fees and $26,057.02 in costs pursuant to 35 U.S.C. § 285.