AT & T CORP., Plaintiff,

v.

MICROSOFT CORPORATION,
Defendant.

No. 01 Civ.4872(WHP).

United States District Court,
S.D. New York.

Nov. 5, 2003.

Jonathan G. Graves, Cooley Godward, LLP, One Freedom Square, Reston, VA, for Plaintiff.

Dale M. Heist, Woodcock, Washburn, Kurtz, MacKiewicz & Norris LLP, Philadelphia, Pennsylvania, for Defendant.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

On June 4, 2001, plaintiff AT & T Corp. ("AT & T") filed this patent infringement action alleging that certain of defendant Microsoft Corporation's ("Microsoft") products containing speech codecs[1] infringe its United States Reissue Patent No. 32,580 (the "580 patent").[2] Currently before this Court is Microsoft's motion for partial summary judgment, pursuant to Fed.R.Civ.P. 56 and 35 U.S.C. § 287(a), to limit AT & T from seeking potential damages in this action accruing prior to April 2, 1999. For the reasons set forth below, Microsoft's motion for partial summary judgment is granted.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-

---

1. "A speech codec is a software program that is capable of coding—converting a speech signal into a more compact code—and decoding—converting the more compact code back into a signal that sounds like the original speech signal." Amended Complaint ("Am. Compl.") ¶ 14.

2. On June 24, 2003, this Court issued a Memorandum and Order construing certain claims in the 580 patent, which familiarity with is presumed. *See AT&T Corp. v. Microsoft Corp.,* 01 Civ. 4872(WHP), 2003 WL 21459573 (S.D.N.Y. June 24, 2003).

ment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 559 (2d Cir.1997). The movant may meet this burden by demonstrating a lack of evidence to support the nonmovant's case on a material issue on which the nonmovant has the burden of proof. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord Matsushita Elec.,* 475 U.S. at 587, 106 S.Ct. 1348. In evaluating the record to determine whether there is a genuine issue as to any material fact, the "evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor."

*Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.

## II. *Section 287(a) Marking and Notice Requirements*

This motion presents the discrete issue of AT & T's entitlement to damages for infringement of the 580 patent prior to April 2, 1999, when AT & T sent Microsoft a letter charging patent infringement. Microsoft argues that the patent marking requirements of 35 U.S.C. § 287(a) limits AT & T's potential monetary recovery to damages for infringement accruing after April 2, 1999. AT & T counters that "its actions put Microsoft on notice of AT & T's patent rights pertaining to the G.723.1 standard [3]—and of AT & T's position that practicing that standard necessarily resulted in infringement—well before AT & T's formal notice letter in April 1999." (AT & T Opposition to Partial Summary Judgment, dated Oct. 10, 2003 ("Pl.'s Opp.") at 5.)

"[T]he amount of damages [a] patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer 'notice of infringement.'" *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1345 (Fed.Cir.2001) (citing 35 U.S.C. § 287(a)). Section 287(a) states:

Patentees ... may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or ... to the package wherein one or more of them is contained, a label containing a like no-

---

**3.** The G.723.1 standard refers to a recommendation by the International Telecommunications Union (the "ITU") that audio codecs comply with a certain standard for uniformity purposes in the marketplace. The ITU is an organization that determines uniform standards for, *inter alia,* video and audio conferencing, AT & T alleges that the technology in its 580 patent is essential to practice the G.723.1 standard, and that Microsoft allegedly infringed the 580 patent by incorporating the G.723.1 audio codec, without authorization, into its NetMeeting 2.0 product.

tice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a) (2003). Therefore, under Section 287(a), a patentee may notify a party it believes is infringing its patent by (1) constructive notice through appropriate marking on the product or label; or (2) actual notice to the alleged infringer. *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469 (Fed.Cir.1997); *Gart*, 254 F.3d at 1345. The parties agree that AT & T failed to mark products incorporating the 580 patent technology. Accordingly, the only issue is whether AT & T provided sufficient actual notice of infringement to Microsoft under Section 287(a).

■ Under Section 287(a), "[a]ctual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed.Cir.1994) (vacating damages award where "merely informational" notice was not actual notice within the meaning of Section 287(a)); *accord Gart*, 254 F.3d at 1345 (noting that mere "notice of the patent's existence or ownership" is insufficient to constitute actual notice). The actual notice "must be an affirmative act on the part of the patentee which informs the defendant of the infringement." *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1327–28 (Fed. Cir.2001) (affirming summary judgment on damages due to lack of actual notice by patentee) (citing *Amsted*, 24 F.3d at 187); *accord Dunlap v. Schofield*, 152 U.S. 244,

248, 14 S.Ct. 576, 38 L.Ed. 426 (1894) (addressing predecessor to Section 287(a) with identical language, requiring that the patentee give notice "to the particular defendants by informing them of his patent and their infringement of it").

■■ "It is irrelevant ... whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under [S]ection 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted*, 24 F.3d at 187 (citing *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir.1993) (holding that actual notice must come from the patentee)); *accord Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed.Cir.1987) (holding that absent notice of infringement, defendant's knowledge of plaintiff's patents is irrelevant); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, No. 96 Civ. 2717(DLC), 1997 WL 83395, at *5 (S.D.N.Y. Feb.27, 1997) (holding notice must come from the patentee as opposed to the infringer or a customer of the infringer); *Hoover Universal Inc. v. Graham Packaging Corp.*, 44 U.S.P.Q.2d 1596, 1599–1602, 1996 WL 907737 (C.D.Cal.1997) (holding that defendant's knowledge of its possible infringement was irrelevant, and that the pertinent inquiry is whether plaintiff gave affirmative notice of infringement). Specifically, "the actual notice requirement of [Section] 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *SRI Int'l*, 127 F.3d at 1470 (noting that a patentee may threaten suit, demand cessation of infringement or offer a license under the patent); *accord Gart*, 254 F.3d at 1345–46 (holding that the notice must contain a "specific charge of infringement");

*GTE Wireless, Inc. v. Qualcomm, Inc.;* 192 F.R.D. 284, 288–89 (S.D.Cal.2000) (finding no actual notice where plaintiff's letter was merely "informational in nature," did not specify that the defendant was infringing, and was addressed to a third-party industry association, rather than to the defendant).

■ The rule that actual notice must "be an affirmative act" by the patentee that "informs the defendant of the infringement," facilitates "the alleged infringer's efforts to avoid continued infringement, and avoids troublesome determinations about the sufficiency of relationships between the notifier and the patentee." *Lans,* 252 F.3d at 1327–28 (noting that "a looser notification rule would present notable enforcement problems").

III. *AT & T's Allegations of Actual Notice*

■ While both parties and this Court agree that AT & T's April 2, 1999 letter to Microsoft was sufficient to satisfy the actual notice requirement of Section 287(a),[4] they dispute whether AT & T gave adequate notice of possible infringement prior to that time. AT & T argues that Microsoft received notice of infringement of the 580 patent prior to April 1999 through AT & T press releases and general statements to the International Telecommunications Union (the "ITU"), as well as from Microsoft's competitors and licensors, and its own employees. Microsoft does not dispute these assertions, but instead argues that such evidence is inadequate to constitute statutory notice. This Court agrees

with Microsoft. None of the general "notices" AT & T asserts are sufficient to satisfy the actual notice requirement of Section 287(a).

A. *AT & T's Notice to the ITU and Users of the G.723.1 Codec*

AT & T argues that it "put all actual and prospective users of the G.723.1 codec on notice of its essential patent rights" through communications with the ITU and through a press release. (Pl.'s Opp. at 11.) Specifically, AT & T alleges that it affirmatively charged Microsoft with infringement through: (1) two general statements addressed to the ITU concerning the need to obtain a license from AT & T to practice the G.723.1 recommendation; and (2) a press release advising that a patent license from AT & T was a prerequisite to practicing the G.723.1 recommendation. AT & T's informational letters to the ITU and press release are insufficient to satisfy the actual notice requirements of Section 287(a).

1. *AT & T's Letters to the ITU*

On June 15, 1995, James E. Lamar, President of AT & T, wrote a letter to Dr. Th. Irmer, Director of the ITU's Telecommunications Standards Bureau (the "TSB"), concerning TSB recommendations in the area of speech coding technology for which AT & T has "essential patents." (Pl.'s Ex. 7 at ATT 000835.) The letter advised Dr. Irmer that pursuant to the TSB Patent Policy, AT & T was not prepared to waive its patent rights, but would be willing to negotiate licenses with other

---

4. The April 2, 1999 letter from AT & T to Microsoft charges that certain Microsoft products with speech compression functionality infringe AT & T's 580 patent, including products that comply with certain international speech compression standards as well those incorporating the DSP Group TrueS-

peech CODEC. (Def.'s Ex. H at ATT02866.) In that letter, AT & T also offered Microsoft a non-exclusive license under the 580 patent to resolve the infringement issue, which it attached to the letter along with a copy of the 580 patent. (Def.'s Ex. H at ATT02868–94.)

parties. (Pl.'s EX. 7 at ATT000835.) The letter also detailed a list of ITU recommendations, including the G.723.1 recommendation, cross-referenced with AT & T's "essential patents" that it alleged were indispensable to practicing those recommendations. (Pl.'s Ex. 7 at ATT000836–39.)

In a separate letter to the ITU, dated April 19, 1996, AT & T identified the 580 patent with respect to an ITU proposal relating to the G.723.1 recommendation. (Pl.'s Ex. 11.) That letter was directed to the industry in general and to any products that complied with the G.723.1 recommendation; however, the letter did not mention Microsoft or identify a Microsoft product as infringing the 580 patent. (Pl.'s Ex. 11; MS 56.1 ¶¶ 14–16; AT & T 56.1 ¶¶ 3–4, 38.) AT & T's letters to the ITU are informational in nature and not the "specific charge of infringement" required by Section 287(a). As noted, the letters were not directed to Microsoft and did not accuse any Microsoft product of infringement. "General knowledge in the marketplace of the existence of a patent is not a substitute for action by the patentee; to hold otherwise, in effect, would relieve a patentee of compliance with the requirements of [S]ection 287." *Lemelson v. Fisher Price Corp.*, 545 F.Supp. 973, 976 (S.D.N.Y.1982); *accord Amsted*, 24 F.3d at 187 (holding plaintiff's letter notifying the whole industry of its patent ownership and warning competitors to cease infringement did not constitute notice under Section 287(a)); *Refac Elec. Corp. v. A&B Beacon Business Machines Corp.*, 695 F.Supp. 753, 755 (S.D.N.Y.1988) (finding no actual notice where plaintiff's letter merely notified defendant of plaintiff's patent but did not identify defendant's infringing product); *GTE Wireless*, 192 F.R.D. at 288 (holding letter to trade association regarding plaintiff's patent and possible infringe-

ment in the industry insufficient to put the defendant on actual notice).

AT & T also presents a salmagundi of evidence that Microsoft was fully aware of AT & T's letters regarding the G.723.1 recommendation to the ITU. From that, AT & T reasons that it warned Microsoft about possible infringement of the 580 patent. (Pl.'s Opp. at 6–11.) Even assuming Microsoft was aware of possible infringement from the ITU letters, such knowledge is irrelevant in determining actual notice. Indeed, AT & T's argument regarding Microsoft's knowledge was expressly rejected by the Federal Circuit in *Amsted*, a case involving a patentee's purported notice sent to numerous members of an industry, including the defendant. *Amsted*, 24 F.3d at 187 (holding notice to whole industry through letter about possible patent infringement was not notice within the meaning of Section 287(a)). The Federal Circuit instructed that "[i]t is irrelevant ... whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted*, 24 F.3d at 187 (citing *Boehl*, 822 F.2d at 1066 ("Absent notice, [defendant's] 'knowledge of the patents' is irrelevant.")); *accord Gart*, 254 F.3d at 1334. Therefore, AT & T's letters to the ITU do not meet the actual notice requirement of Section 287(a).

### 2. *AT & T's Press Release*

On August 10, 1995, approximately two months after its first letter to the ITU, AT & T issued a press release advising that a patent license was a prerequisite to practicing the G. 723.1 recommendation, and announcing the availability of licenses for users of that standard. (Pl.'s Ex. 10.) AT & T's press release was self-evidently a

general, informational document promulgated to the industry. It does not mention Microsoft or its products, let alone affirmatively charge Microsoft with infringement. *See Amsted,* 24 F.3d at 187 (holding merely informational letter to the industry insufficient to constitute notice under Section 287(a)); *SRI Int'l,* 127 F.3d at 1470 (holding that the patent owner must notify the defendant with "sufficient specificity" of its alleged infringement). That Microsoft may have learned of the press release only shows possible awareness of infringement, a factor irrelevant to deciding whether plaintiff effected actual notice. *See Amsted,* 24 F.3d at 187; *Hoover,* 44 U.S.P.Q.2d at 1601. Therefore, AT & T's press release does not constitute actual notice under Section 287(a).

B. *Intel and Lucent's Notice to Microsoft*

On June 1, 1996, Microsoft entered into a Strategic Development Agreement ("SDA") with Intel through which Microsoft licensed H.323 software code from Intel that included a G.723.1 audio codec. (Pl.'s Ex. 14; Deposition of Blake Irving, dated November 21, 2002 ("Irving Dep.") at 27–29.) At the time, ITU standard H.323 was the standard for video and audio conferencing. (Pl.'s Ex. 12.) In light of the upcoming release of CoolTalk, a competing product that practiced the H.323 standard, Microsoft quickly entered into the SDA with Intel to insert the H.323 code into NetMeeting. (Pl.'s Ex. 15; Irving Dep. at 131.)

AT & T argues that Microsoft was aware, through an Intel letter, that the SDA did not convey any third party patent rights and that it would need patent licenses from "others" to practice the G.723.1 standard. (Pl.'s Opp. at 12–14.) Specifically, AT & T points to an August 12, 1996 letter from Intel's in-house counsel, Michael Moradzadeh, to Microsoft's in-house counsel Cory Van Arsdale, informing Microsoft that DSP Group, a third party with patent rights over the G.723 standard, had inquired as to whether Intel had purported to grant Microsoft a license. (Pl.'s Ex. 16.) Intel advised Microsoft that it intended to inform DSP Group that it had not provided Microsoft with any patent license rights, and further advised Microsoft that it "may wish to consider contacting the DSP Group, or the ITU generally regarding patent rights in the various interfaces." (Pl.'s Ex. 16; Moradzadeh Dep. at 55–56.)

In August 1996, Blake Irving and Max Morris of Microsoft met with representatives of the Elemedia unit of Lucent Technologies ("Lucent"), then an affiliate of AT & T,[5] to discuss Lucent's speech coding technology. (Deposition of Max Glenn Morris, dated January 30, 2003 ("Morris Dep.") at 66–94.) During that meeting, Lucent informed Microsoft that AT & T may have patents implicated by the G.723 standard. (Morris Dep. at 94.) In October 1996, without a license from AT & T, Microsoft launched a pre-release version of NetMeeting 2.0 with the allegedly infringing G.723.1 codec included. (Pl.'s Ex. 17; MS 56.1 Stmt. ¶ 17; Nixon Dep. at 41–42.)

5. This Court takes judicial notice that in February 1996, the systems and technology unit of AT & T was renamed Lucent Technologies, and in April 1996, Lucent launched its separation from AT & T with an initial public offering of stock. The spin-off was finalized in September 1996. *See* Fed.R.Evid. 201 (judicial notice of facts "generally known within the territorial jurisdiction of the trial court ... may be taken at any stage of the proceeding"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 02 MDL 1484(MP), 2003 WL 22451064, at *3 n. 6 (S.D.N.Y. Oct. 29, 2003); *see also* http://www.lucent.com/corpinfo/history.html.

AT & T alleges that the Intel and Lucent notifications concerning AT & T patents implicated by the G.723 recommendation are sufficient to constitute statutory notice pursuant to 35 U.S.C. § 287(a). This Court disagrees. The Intel communication is insufficient to satisfy Section 287(a) since it is not an affirmative charge of infringement from AT & T, the patent holder. *See Lans*, 252 F.3d at 1327–28 (holding that notice of infringement must come from the patentee); *Amsted*, 24 F.3d at 187 (same); *AMS*, 6 F.3d at 1537 n. 18 (same). Further, while Lucent was an affiliate of AT & T at the time of the August 1996 meeting, their relationship is insufficient to attribute Lucent's admonitions to AT & T. "[N]otice from someone closely associated with the patentee does not satisfy Section 287(a).... [O]nly the patentee has authority to grant licenses or accept design changes to facilitate the purposes of the notification requirement. Moreover a looser notification rule would present notable enforcement problems." *Lans*, 252 F.3d at 1327. There is no evidence or claim that Lucent had such a special relationship with AT & T that would empower it to grant licenses on the 580 patent. Accordingly, Lucent's notification does not constitute statutory notice by AT & T to Microsoft.

### C. *AT & T's Statements at the VoIP Forum Meeting*

On January 15 and 16, 1997, Microsoft hosted a meeting of the Voice over Internet Protocol ("VoIP") Forum activity group of the International Multimedia Telecommunications Consortium ("IMTC"). The IMTC is a consortium that attempts "to harmonize different standards to provide a basis for interoperation of equipment in the multimedia teleconferencing area." (Deposition of Dr. Richard Cox ("Cox Dep.") at 420.) The January 1997 VoIp Forum meeting concerned the selection of a standard default audio codec for internet telephony. (Pl.'s Ex. 18.) The competing recommendations were ITU standards G.723.1 and G.729A. AT & T contends that both alternatives implicate technology in its 580 patent. (Pl.'s Ex. 7.)

At the VoIP conference, many companies claimed to have essential patents covering the G.723.1 standard. (Deposition of Toby Lee Nixon, dated August 13, 2003 ("Nixon Dep.") at 56–57.) During that conference, AT & T advised attendees, including Microsoft employees, that AT & T had an essential patent and that users of the G.723.1 standard would need a non-exclusive license to avoid infringement. (*See, e.g.*, Deposition of Frederick Burg, dated May 3, 2003 ("Burg Dep.") at 149–51, 185–186 266–68.) Specifically, debate with a Lucent representative, AT & T's Dr. Richard Cox informed the audience that AT & T owned essential G.723.1 intellectual property and that users of G.723.1 would need a license from AT & T, as opposed to a Lucent pass-through license covering all third-party patents, to practice the standard. (Pl.'s Exs. 18, 20; Burg Dep. at 185–86, 273–75; Nixon Dep. at 100–01.) Toby Nixon, a Microsoft employee, recounted this licensing rights dispute in a report to Microsoft management. (Pl.'s Ex. 18 at MSATT084513.)

Although Microsoft was aware that AT & T asserted patent rights essential to practicing the G.723.1 standard (Nixon Dep. at 100–01), such knowledge is insufficient to establish that AT & T affirmatively acted to charge Microsoft specifically with infringement of its 580 patent. *See Amsted*, 24 F.3d at 187 (instructing district courts to focus on the action of the patentee, not the understanding of the infringer and stating that "[i]t is irrelevant ... whether the defendant knew of the patent or knew of his own infringement.") The Federal Circuit has held unambiguously

that general, informational statements to an industry organization concerning possible infringement, as opposed to specific charges of infringement against another party, are insufficient to satisfy the statutory notice requirement. *See, e.g., Amsted,* 24 F.3d at 186–87 (vacating jury's damage award where letter to the entire industry, including the defendant, advised of plaintiff's ownership of patent and warned companies not to infringe was not notice within the meaning of Section 287(a)); *Gart,* 254 F.3d at 1343–44 (instructing that in determining whether a patentee's communication provides "sufficient specificity," a court "cannot take into consideration" the knowledge or understanding of the alleged infringer, but must instead focus on the action of the patentee).

Additionally, Nixon's internal report to Microsoft management concerning AT & T's assertion of patent rights over the G.723.1 codec does not alter the analysis since "notice of infringement must . . . come from the patentee, not the infringer." *AMS,* 6 F.3d at 1523 n. 18 (rejecting plaintiff's claim that defendant's notification by its own counsel concerning possible infringement of plaintiff's patent was sufficient to constitute Section 287(a) notice); *accord Lans,* 252 F.3d at 1327–28 (declining to find adequate notice where a party closely associated with the patentee notified the infringer, and holding that "a looser rule" on actual notification would thwart the purposes behind Section 281(a)). Accordingly, AT & T's statements at the VoIP Forum meeting and Nixon's report to Microsoft management do not meet the threshold of actual notice under Section 287(a).

D. *Natural MicroSystems' December 1997 E–Mail*

On December 8, 1997, Nixon received an e-mail forwarding a letter from Bob Schechter, Chairman and CEO of Natural MicroSystems, Inc., to the VoIP Forum of the IMTC (the "Natural MicroSystems E–Mail"). (Pl.'s Ex. 22.) The Natural Microsystems E–Mail addressed costs and other issues associated with securing licenses from patents holders, including AT & T, covering the G.723.1 recommendation. AT & T argues that the Natural MicroSystems E–Mail placed Microsoft on notice that AT & T held a patent necessary to practice the G.723.1 ITU recommendation. While that e-mail discussed patents covering the G.723.1 recommendation, it is insufficient to satisfy the actual knowledge requirement of Section 287(a) because (1) the communication is from a third party; and (2) the communication does not contain a specific charge of infringement by AT & T against Microsoft. *See SRI Int'l,* 127 F.3d at 1470 (holding actual notice must be more than "merely informational"); *Lans,* 252 F.3d at 1327–28 (holding plaintiff failed to satisfy the statutory notice requirement where the original patentee, as opposed to the current one, gave defendant notice of infringement); *Hoover,* 44 U.S.P.Q.2d at 1600–01 (holding that letters from third parties do not constitute actual notice under Section 287(a)). Therefore, the Natural Microsystems E-mail does not satisfy Section 287(a)'s actual notice requirement.

E. *Lucent's March 1998 Report on the 580 Patent*

Finally, AT & T argues that a March 1998 report forwarded by Lucent to Microsoft satisfies the statutory notice requirement. On March 27, 1998, Peter Avioli of Lucent faxed to Dan Rosen of Microsoft a Lucent report titled "The Use of Speech Codecs for VoIP Applications—Some Intellectual Property Considerations" (the "Lucent Report"). (Pl.'s Ex. 23.) In connection with his responsibilities for intellectual property issues at Microsoft, Rosen

forwarded the Lucent Report to three other Microsoft employees, including Net-Meeting software engineer Max Morris. (Nixon Dep. at 133–34; Pl.'s Ex. 23 at MSATT 064146.) The Lucent Report discusses speech compression technology and AT & T's 580 patent. In discussing the 580 patent and the standardization of codecs, the Lucent Report further notes that "[w]ith standard codecs ... it may not be possible to avoid patent infringement.... In addition to the above key patents [including the 580 patent,] other patents have been identified by their owners as applying to specific standards." (Pl.'s Ex. 23 at MSATT 064149.)

The Lucent Report is not statutory notice because (1) it is an informational report, as opposed to a direct notice of infringement, and (2) it is from a third party, not the patentee. *See Amsted*, 24 F.3d at 187 (rejecting claim of actual notice where letter was merely informational); *Lans*, 252 F.3d at 1327–28 (holding that "notice from someone closely associated with the patentee does not satisfy Section 287(a)"); *AMS*, 6 F.3d at 1537 n. 18 (holding that "notice of infringement must ... come from the patentee"); *Hoover*, 44 U.S.P.Q.2d at 1600–01 (rejecting letters and statements as actual notice where they came from third parties and were not direct and specific notices of infringement). Therefore, the Lucent Report does not raise a genuine issue of material fact concerning statutory notice.

### CONCLUSION

For the reasons set forth above, this Court grants Microsoft's motion for partial summary judgment on damages and limits AT & T's potential monetary recovery in this action to damages accruing on and after April 2, 1999.