**SEAL–FLEX, INC., a Minnesota corporation, Plaintiff,**

v.

**W.R. DOUGHERTY AND ASSOCIATES, INC., d/b/a Sports Surfaces, a Michigan corporation, Defendant.**

No. CIV. 00–40162.

United States District Court,
E.D. Michigan,
Southern Division.

March 28, 2003.

Thomas N. Young, Young & Basile, Troy, Marshall G. MacFarlane, Young & Basile, Ann Arbor, for Seal–Flex, Incorporated, a Minnesota corporation, plaintiff.

Eugene S. Hoiby, Eugene S. Hoiby Assoc., Livonia, for W.R. Dougherty and Associates, Incorporated, a Michigan corporation dba Sports Surfaces, defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GADOLA, District Judge.

The Court conducted a bench trial in this matter solely on the issue of damages. The parties presented evidence on May 7, 2002 and May 8, 2002, and the Court heard closing arguments on June 26, 2002. Pursuant to an order issued by the Court on January 29, 2003, Plaintiff filed a motion to reopen the proofs on February 12, 2003. The Court denies Plaintiff's motion in an order issued concurrently with these Findings of Fact and Conclusions of Law.

During the course of the trial, the Court received testimony, documentary evidence, and physical exhibits. The Court now issues its Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure. These Findings of Fact and Conclusions of Law represent the Court's consideration of all of the evidence in light of the pertinent law, the Court's observation of the witnesses, and its evaluation of their demeanor, qualifications and credibility.

Every Finding of Fact that may be construed to incorporate a Conclusion of Law is hereby adopted as a Conclusion of Law. Every Conclusion of Law that may be construed to incorporate a Finding of Fact is hereby adopted as a Finding of Fact. The sub-headings used herein are for convenience only. If a Finding of Fact or Conclusion of Law is pertinent to any determination other than that indicated by the heading under which it appears, it is deemed adopted as a Finding of Fact or Conclusion of Law applicable to such other determination or determinations as may be appropriate.

## I. FINDINGS OF FACT

### A. BACKGROUND

1. Plaintiff filed the complaint in this patent infringement action on April 26, 2000. The Court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. Plaintiff Seal–Flex, Inc. ("Plaintiff" or "Seal–Flex") is a Minnesota corporation and the assignee of U.S. Patent No. 4,529,-622 (the "'622 patent"), which issued on July 16, 1985. (Rev. Joint Pretrial Order ¶ 4(a); Pl.Ex. 1.)

3. The '622 patent describes a method for constructing an all weather surface used on running tracks (the "Seal–Flex method"). (Rev. Joint Pretrial Order

¶ 4(b); Pl.Ex. 1.) The '622 patent expired on October 2, 2001. (Pl.Ex. 1.)

4. In Michigan, Plaintiff licenses use of the '622 patent to Current Surfaces, Inc., a contract installer of athletic surfaces. (Rev. Joint Pretrial Order ¶ 4(c).)

5. Defendant W.R. Dougherty and Associates, Inc. ("Defendant") is a Michigan corporation doing business as "Sports Surfaces" as well as in its own name. (Rev. Joint Pretrial Order ¶ 4(d).)

6. Defendant installs running tracks and other athletic surfaces. (Rev. Joint Pretrial Order ¶ 4(e).)

7. Richard R. Dougherty is President of Defendant W.R. Dougherty and Associates, Inc. (Vol. I 68.)[1] Richard Dougherty has been President of Defendant since 1987. (Vol. I 69–70.)

8. Defendant is a small, closely held corporation, and Defendant's stock is owned solely by Richard Dougherty's father, William Dougherty. (Vol. I 72; Vol. II 65.) Richard Dougherty at one time owned a minority stake in Defendant. (Vol. I 70.)

9. From 1979 to 1989, Richard Dougherty was employed by Dougherty Contractors, Inc. ("Dougherty Contractors"). (Vol. I 70–72.) Dougherty Contractors was a small, closely held corporation owned by Richard Dougherty's father, William Dougherty. (Vol. I. 70–72; Vol. II 65–66.) At one time, Richard Dougherty held a minority ownership interest in Dougherty Contractors. (Vol. I 72.)

10. Both Dougherty Contractors and Defendant have always engaged in the business of installing athletic surfaces. (Vol. I 74.)

11. This Court has held that Defendant literally infringed claims 1, 4, 5, and 6 of

the '622 patent. *See* slip. op. at 14 (April 23, 2001).

12. This Court has held that claims 1, 4, 5, and 6 of the '622 patent are valid. *See Seal–Flex, Inc. v. W.R. Dougherty and Assoc., Inc.,* 179 F.Supp.2d 735, 742 (E.D.Mich.2002).

## B. DAMAGES

### 1. REASONABLE ROYALTY

13. Plaintiff is entitled to damages from April 26, 1994, which is six years prior to the filing of the complaint, until the '622 patent's expiration date. 35 U.S.C. § 286.

14. On the issue of damages, Plaintiff presented evidence regarding a reasonable royalty and did not attempt to prove actual damages in the form of lost profits.

15. In 1983, Plaintiff entered into a licensing agreement with "The Track Group, Inc." as "Licensee," and six "Members" as "Sub–Licensees." (Pl.Ex. 4.) The 1983 licensing agreement provided, in relevant part: "Each Member shall pay royalties to Seal–Flex of Five Cents (5¢) per pound and to Licensee of Three Cents (3¢) per pound for each pound of ground rubber used by such member in the application of the Seal–Flex process. The combined royalty of Eight Cents (8¢) per pound shall be collected by Licensee as a matter of convenience to all parties." (Pl. Ex. 4 at ¶ 4.)

16. On May 30, 1983, Dougherty Contractors entered into the above-referenced licensing agreement as a sub-licensee of Seal–Flex. (Pl.Ex. 4.) Richard Dougherty signed the licensing agreement on behalf of Dougherty Contractors. (Vol. I. 76.; Vol. II 66; Pl.Ex. 4.)

---

**1.** The transcripts from the damages trial are divided into two volumes. Volume I contains the testimony from May 7, 2002, and Volume II contains the testimony from May 8, 2002. Numbers in parentheses refer to page numbers in the transcript volumes.

17. William Dougherty engaged in the negotiations leading to the licensing agreement between Seal–Flex and Dougherty Contractors. (Vol. I. 76; Vol. II 66.)

18. A reasonable royalty as evidenced by Plaintiff's established licensing practice among its membership is eight cents per pound of rubber. (Pl.Ex. 4; Vol. I 30–31; Vol. II. 40, 49–50.); *see* Conclusions of Law, *infra*, Part II.B.1.

19. Plaintiff offered expert testimony on the calculation of a reasonable royalty. (Vol. II 42–50.) Defendant offered no such testimony.

20. On average, eight pounds of rubber are applied to a square yard of running track. (Pl.Ex. 151(rev.).)

21. The average track size is 4,500 to 5,500 square yards. (Pl.Ex. 151(rev.).)

22. During the six years prior to the filing of the complaint, Defendant installed 258,675 total surface square yards of infringing rubber latex tracks. (Pl.Ex. 151(rev.), Sched. II) (excluding Exhibits 80, 101, 103 and 111.)[2]

23. The following Exhibits admitted at trial are relevant to the determination of the value of Defendant's sales of infringing running tracks:

| | | | |
|---|---|---|---|
| Pl.Ex. 28 | Pl.Ex. 47 | Pl.Ex. 61 | Pl.Ex. 78 |
| Pl.Ex. 33 | Pl.Ex. 48 | Pl.Ex. 62 | Pl.Ex. 79 |
| Pl.Ex. 34 | Pl.Ex. 49 | Pl.Ex. 63 | Pl.Ex. 81 |
| Pl.Ex. 35 | Pl.Ex. 50 | Pl.Ex. 64 | Pl.Ex. 97 |
| Pl.Ex. 36 | Pl.Ex. 51 | Pl.Ex. 66 | Pl.Ex. 102 |
| Pl.Ex. 38 | Pl.Ex. 52 | Pl.Ex. 67 | Pl.Ex. 149 |
| Pl.Ex. 39 | Pl.Ex. 53 | Pl.Ex. 69 | Pl.Ex. 150 |
| Pl.Ex. 40 | Pl.Ex. 54 | Pl.Ex. 70 | |
| Pl.Ex. 41 | Pl.Ex. 55 | Pl.Ex. 71 | |
| Pl.Ex. 42 | Pl.Ex. 56 | Pl.Ex. 72 | |
| Pl.Ex. 43 | Pl.Ex. 57 | Pl.Ex. 73 | |
| Pl.Ex. 44 | Pl.Ex. 58 | Pl.Ex. 74 | |
| Pl.Ex. 45 | Pl.Ex. 59 | Pl.Ex. 76 | |
| Pl.Ex. 46 | Pl.Ex. 60 | Pl.Ex. 77 | |

(Vol. II 4–14, 30–32; Pl.Ex. 151(rev.)); *see also* slip op., filed concurrently with Findings of Fact and Conclusions of Law.

24. Multiplying 258,675 total surface square yards by eight pounds of rubber per square yard yields 2,069,400 total pounds of rubber applied to infringing running tracks during the six years prior to the filing of the complaint. (Pl.Ex. 151(rev.), Sched. II.)

25. Multiplying 2,069,400 total pounds of rubber by a royalty rate of eight cents per square yard produces a total royalty of $165,552, exclusive of prejudgment interest. (Pl.Ex. 151(rev.), Sched. II.)

## 2. CONVOYED SALES

26. As set forth in the Court's Conclusions of Law, Plaintiff is not entitled to damages based upon convoyed sales as a

---

2. Exhibits 46, 101, 102, and 103, all concerned the "Monument Valley package" at San Juan School District. (Vol. II 31.) The Court has concluded, however, that Exhibits 101 and 103 are not relevant to the damages calculation because these Exhibits do not represent projects involving the installation of infringing running tracks. Exhibit 103 was not admitted at trial, and the Court addresses Exhibit 103 in its order denying Plaintiff's motion to reopen the proofs, issued concurrently with these Findings of Fact and Conclusions of Law. Exhibit 101 was admitted, and thus the Court addresses it here.

Richard Dougherty admitted that Exhibits 46 and 102 represented installations of infringing tracks. (Vol. II 5.) However, Richard Dougherty also testified that, of the four schools in the Monument Valley package, *only two* involved use of the Seal–Flex method. (Vol. II 31–32.) The remaining two schools involved repairs *only* and *did not* involve the use of the Seal–Flex method. (Vol. II 31–32.) It appears clear that Exhibit 101 and Exhibit 103 represent the two non-infringing repair projects. This conclusion is supported not only by Richard Dougherty's testimony, but also by the fact that Exhibits 46 and 102 involve significantly higher dollar amounts than Exhibits 101 and 103. Accordingly, the Court concludes that Exhibit 101 is not relevant to the issue of damages because the project represented by that Exhibit did not involve use of the Seal–Flex method.

matter of law. *See* Conclusions of Law, *infra* Part II.B.2.

### C. WILLFUL INFRINGEMENT

27. The licensing agreement between Seal–Flex and Dougherty Contractors signed by Richard Dougherty and negotiated by William Dougherty, stated that "Seal–Flex has made application for a patent on the Seal–Flex Process." (Pl.Ex. 4 at ¶ 8.)

28. Richard Dougherty was aware of the Seal–Flex method and the fact that a patent was pending on this method as early as May, 1983, when he entered the licensing agreement on behalf of Dougherty Contractors. (Pl.Ex. 4.)

29. William Dougherty was aware that Seal–Flex had applied for a patent on its methodology as of May, 1983, when Dougherty Contractors entered into the licensing agreement with Seal–Flex. (Vol. II.66–67.)

30. After entering into the licensing agreement, Dougherty Contractors began installing tracks using the Seal–Flex method. (Vol. I 77; Vol. II 66.)

31. Pursuant to the licensing agreement, Dougherty Contractors paid a royalty of eight cents per pound of rubber to Seal–Flex. (Vol. I 77–79; Vol. II 67.)

32. Dougherty Contractors and Defendant installed latex and rubber running tracks from 1983 until 2000 using the Seal–Flex method. (Vol. I 81.; Vol. II 67.)

33. At some point between 1984 and 1989, Dougherty Contractors' license to install Seal–Flex tracks was revoked after the other licensees determined that Dougherty Contractors had violated the non-compete provisions of the agreement. (Vol. I 33.)

34. Dougherty Contractors and Defendant continued to utilize the Seal–Flex method to install running tracks after the revocation of Dougherty Contractors' license to do so. (Vol. II 67.)

35. Neither Dougherty Contractors nor Defendant paid royalties to Seal–Flex after the revocation of Dougherty Contractors' license. (Vol. II 67.)

36. William Dougherty was aware that Seal–Flex had been granted a patent on its methodology prior to the filing of this action. (Vol. II 68–69.)

37. Plaintiff's patent counsel contacted Defendant by letter on March 25, 1994, and March 12, 1998, warning Defendant that Plaintiff would challenge infringement of the '622 patent. (Pl.Ex. 84.; Vol. II 38.)

38. At least as early as 1994, William Dougherty and Richard Dougherty were aware that Seal–Flex was accusing Defendant of infringing the '622 patent. (Vol. II 38; 69–70, 72; Pl.Ex. 84.)

39. Despite accusations of infringement from Plaintiff's counsel, Defendant continued to install tracks using the Seal–Flex method. (Vol. II 39.)

40. William Dougherty has never applied for a patent and has no knowledge of patent law. (Vol. II 70–71.) Moreover, William Dougherty has never been listed as an inventor or co-inventor on a patent and has never negotiated for a license on a patent. (Vol. II 71.) Richard Dougherty also has no experience with patents or knowledge of patent law. (Vol. II 16.)

41. From the time that Dougherty Contractors' license with Seal–Flex was terminated through the time of this suit, Richard Dougherty made no contact with a patent attorney regarding Defendant's potential liability for infringement of the '622 patent. (Vol. II 15–16.)

42. William Dougherty never sought the advice of patent counsel regarding Defendant's potential liability for infringement of the '622 patent. (Vol. II 71–72.)

43. William Dougherty concluded that Defendant had not infringed the '622 patent, drawing this conclusion without the advice of patent counsel. (Vol. II 72–73.) William Dougherty's conclusion of non-infringement was based upon his belief that he had utilized a method identical to that set forth in the '622 patent before Seal–Flex had applied for the patent. (Vol. II 68–70.)

44. Richard Dougherty concluded that Defendant had not infringed the '622 patent based upon his belief that the patent had been ruled invalid in another lawsuit. (Vol. II 18, 22–23, 38–39.) Richard Dougherty also concluded that Defendant had not infringed the '622 patent based upon his belief that his father had used an identical process prior to Seal–Flex's application for the patent. (Vol. II 19, 23, 40.)

45. In a letter dated March 12, 1998, counsel for Plaintiff informed Richard Dougherty that the prior litigation in question involving the '622 patent had not been lost but settled. (Vol. II 39; Pl.Ex. 84.) Richard Dougherty understood from this correspondence that Plaintiff's counsel was directing Defendant not to bid on tracks requiring the Seal–Flex method. (Vol. II 40.)

46. Despite this contact from Plaintiff's counsel, Richard Dougherty continued to install tracks using the Seal–Flex method. (Vol. II 39.)

### D. ATTORNEYS' FEES

47. The Court incorporates by reference its Findings of Fact on the issue of willful infringement. *See* Findings of Fact, *supra*, Part I.C.

48. The Court granted Plaintiff's motions for summary judgment on the issues of infringement, *see* slip op. at 14 (April 23, 2001), and validity, *see* Seal–Flex, 179 F.Supp.2d 735, 742 (E.D.Mich.2002).

49. In granting Plaintiff's motion for summary judgment on the issue of infringement, the Court observed that Defendant had presented essentially no defense to Plaintiff's allegations. *See* slip op. at 14 (April 23, 2001) ("[R]ather than attempting to show that there is a genuine issue of fact as to the infringement question, Defendant argues that the '622 Patent is invalid under the 'on sale bar' of 35 U.S.C. § 102(b).").

50. In denying Defendant's motion for summary judgment on the issue of validity, the Court noted that Defendant had presented "no documentary or physical record to corroborate any of the alleged prior uses" of the '622 patent by William Dougherty. *Seal–Flex*, 179 F.Supp.2d at 741. Rather, in support of its claim of invalidity, Defendant submitted four affidavits and the deposition testimony of William Dougherty. *See id.* at 739. The Court found Defendant's evidence insufficient as a matter of law to establish invalidity by clear and convincing evidence and granted Plaintiff's cross-motion for summary judgment on this issue. *See id.* at 741–42.

51. Defendant conducted no discovery during this action. (Pl. Proposed Findings of Fact ¶ 69.)

52. Defendant did not file a witness list in this case, and the Court concluded that Defendant had violated the Local Rules of the Eastern District of Michigan by listing three witnesses improperly in the Revised Joint Pretrial Order. *See* slip op. (April 25, 2002).

53. Defendant did not file an exhibit list in this case and listed no exhibits in the Joint Pretrial Order. (Rev. Joint Pretrial Order ¶ 9.) The Court found Defendant in violation of the Local Rules of the Eastern District of Michigan by attempting to introduce exhibits at trial without having listed those exhibits in the Revised Joint Pretrial Order and without having filed an exhibit list. (Vol. I 8.)

## II. CONCLUSIONS OF LAW

### A. BACKGROUND

54. Defendant has literally infringed claims 1, 4, 5, and 6 of the '622 patent. *See* slip op. at 14 (April 23, 2001).

55. Claims 1, 4, 5, and 6 of the '622 patent are valid. *See Seal–Flex,* 179 F.Supp.2d at 742.

### B. DAMAGES

### 1. REASONABLE ROYALTY

56. "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286.

57. "In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated." *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.,* 895 F.2d 1403, 1406 (Fed.Cir.1990).

58. Accordingly, 35 U.S.C. § 284 provides, in relevant part: "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."

59. Moreover, where damages based upon a reasonable royalty do not compensate a patentee adequately, the trial court in its discretion may increase the award, and also may award treble damages, attorneys' fees, and prejudgment interest. *See King Instruments Corp. v. Perego,* 65 F.3d 941, 951 n. 6 (Fed.Cir. 1995); *see also* 35 U.S.C. §§ 284, 285.

60. "The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." 35 U.S.C. § 284.

61. The owner of the patent bears the burden of proof in establishing the amount of damages. *Fromson v. Western Litho Plate and Supply Co.,* 853 F.2d 1568, 1574 (Fed.Cir.1988).

62. "[T]he statutory measure of 'damages' is 'the difference between [the patent owner's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.'" *Riles v. Shell Exploration and Prod. Co.,* 298 F.3d 1302, 1311 (Fed. Cir.2002) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964)) (alternation in original).

63. "There are two methods by which damages may be calculated under this statute. If the record permits the determination of actual damages, namely, the profits the patentee lost from the infringement, that determination accurately measures the patentee's loss. If actual damages cannot be ascertained, then a reasonable royalty must be determined." *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078 (Fed.Cir.1983) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works,* 575 F.2d 1152, 1157 (6th Cir.1978)).

64. A reasonable royalty is not merely a means of calculating damages, but is "the floor below which a damage award may not fall." *Fromson,* 853 F.2d at 1574.

65. "The reasonable royalty may be based upon an established royalty, if there is one, or if not upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee." *Hanson,* 718 F.2d at 1078; *accord Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579 (Fed.Cir.1996).

66. An established royalty, if proven to exist, is usually the best measure of reasonable compensation for infringement. *Hanson,* 718 F.2d at 1078

(quoting *Tektronix, Inc. v. United States,* 213 Ct.Cl. 257, 552 F.2d 343, 347 (1977)); *accord Nickson Indus., Inc. v. Rol Mfg. Co.,* 847 F.2d 795, 798 (Fed.Cir.1988).

67. In order for a court to find that a royalty is "established," the royalty:

(1) [ ] must be paid or secured before the infringement began; (2)[ ] must be paid by a sufficient number of persons to indicate the reasonableness of the rate; (3)[ ] must be uniform in amount; (4)[ ] must not have been paid under threat of suit or in settlement of litigation; and (5)[ ] must be for comparable rights or activity under the patent.

*Mobil Oil Corp. v. Amoco Chemicals Corp.,* 915 F.Supp. 1333, 1342 (D.Del.1994); *accord Rude v. Westcott,* 130 U.S. 152, 165, 9 S.Ct. 463, 32 L.Ed. 888 (1889); *Hanson,* 718 F.2d at 1078.

68. Here, the 1983 agreement in which Plaintiff licensed the Seal–Flex method to the "The Track Group, Inc." as licensee, and six sub-licensees, including Dougherty Contractors, (Pl.Ex. 4), supports the existence of an established royalty rate of eight cents per pound of rubber under the five factors set forth above.

69. *First,* the licensing agreement was secured prior to the infringement in this case. *Second,* the number of sub-licensees supports a finding that the royalty rate is reasonable. Of particular relevance is the fact that Defendant's President, Richard Dougherty, signed the 1983 licensing agreement on behalf of Dougherty Contractors. *Third,* the rate of eight cents per pound was uniform among all sub-licensees. *Fourth,* there is no evidence that the 1983 license agreement was entered into upon threat of suit or upon settlement of litigation. *Fifth,* the licensing agreement granted the sub-licensees the right to use the method that was ultimately patented in the '622 patent and infringed by Defendant. Defendant has presented no evidence that the method licensed to Dougherty Contractors in May, 1983, was in any respect different from the method protected in the '622 patent.

70. Therefore, upon review of all of the evidence submitted at trial, including the 1983 licensing agreement, the testimony of Plaintiff's expert, Plaintiff's expert's report, the testimony of Darryl Current, Plaintiff's Michigan licensee, and the testimony of Richard Dougherty and William Dougherty, the Court finds that Plaintiff has proven the existence of an established royalty rate of eight cents per pound of rubber.

71. Plaintiff requests no more than the established royalty of eight cents per pound of rubber, and thus, the Court finds this to be a reasonable royalty, as required by the statute. *See* 35 U.S.C. § 284.

72. In light of the existence of an *established* royalty, the Court need not engage in the process of determining a *hypothetical* royalty. *See Mobil Oil,* 915 F.Supp. at 1341.

73. Applying the established reasonable royalty rate of eight cents per pound of rubber to the facts in this case yields a royalty on Defendant's infringing running tracks of $ 165,552, exclusive of prejudgment interest. *See* Findings of Fact, *infra,* Part I.B.1.

## 2. CONVOYED SALES

74. Plaintiff seeks additional damages in the form of a royalty on the value of Defendant's alleged "collateral" or "convoyed" sales. (Pl. Proposed Findings of Fact ¶ 25, 27.)

75. Collateral sales represent ancillary items that Defendant allegedly sold in connection with its sales of infringing running tracks, such as asphalt bases and tennis courts. (Pl. Proposed Findings of Fact ¶ 26.)

76. For the following reasons, the Court finds as a matter of law that Plaintiff is not entitled to damages based upon alleged collateral sales.

77. "Collateral products have been considered as a part of lost profits or as part of a 'negotiated' royalty rate, depending on what constitutes appropriate compensation for the infringement." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 286, 288 (W.D.Mich.1995) (citing cases).

78. Here, Plaintiff has not proven damages based upon lost profits. Rather, Plaintiff has demonstrated an established royalty upon which the Court has computed damages resulting from Defendant's infringement of the '622 patent. Had Plaintiff proven lost profits, it may have been entitled to recover lost profits on collateral sales. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, No. 88–1814–MA, 1993 WL 1510657, at *23 (D.Mass. April 27, 1993). However, collateral sales "do not create a separate sum on which the royalty is calculated." *Id.; see also* 1 John M. Skenyon, Christopher S. Marchese, John Land *Patent Damages Law & Practice* § 3:7 (2002) (noting that, while collateral sales may be considered in the royalty *rate*, they are not to be included in the royalty *base* ).

79. By attempting to recover a royalty on the value of collateral sales, Plaintiff is including collateral sales improperly in the royalty base.

80. An *established* royalty, which Plaintiff has proven in this case, by its nature incorporates the parties' expectations that licensees will derive collateral benefits through the use of the patented method. This principle is illustrated by the concept of a hypothetical reasonable royalty, which courts determine by considering a number of factors, including the potential value of collateral sales. *See Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1132 (S.D.N.Y.1970) ("Both the hypothetical licensor's expectant loss of collateral sales and the hypothetical licensee's expectation of profits on its collateral sales are relevant elements to be considered in determining a reasonable royalty.") (citations omitted); *see also Festo*, 1993 WL 1510657, at *23 ("To the extent that hypothetical negotiators might anticipate convoyed sales from the sale of magnetically coupled rodless cylinders, that factor has been taken into account in the fifteen percent royalty figure.").

81. Thus, if the Court were to award Plaintiff additional damages based upon collateral sales, above and beyond the established royalty, Plaintiff would in effect receive a double recovery.

82. "[T]he principle of patent damages is to return the patentee to the pecuniary position it would have been in but for the infringement." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1223 (Fed.Cir. 1995) (citing *Aro Mfg.*, 377 U.S. at 507, 84 S.Ct. 1526). Mindful of this principle, the Court notes that, had the infringement never occurred, Defendant likely would have paid to Plaintiff the established royalty rate of eight cents per pound of rubber, and no more. Plaintiff would not have been entitled to any additional amount based upon collateral sales because such additional benefits were contemplated in the parties' royalty agreement.

83. Plaintiff has provided the Court with no persuasive legal authority supporting its request for damages based upon collateral sales. The sole case cited by Plaintiff, *State Industries, Inc. v. Mor–Flo Industries, Inc.*, 883 F.2d 1573 (Fed.Cir. 1989), is inapposite to Plaintiff's position.

84. In *Mor–Flo*, the Federal Circuit concluded that "[t]he value of collateral sales could . . . be factored into the royalty rate." *Id.* at 1580. Here, Plaintiff has not requested that the Court consider the val-

ue of collateral sales for the purpose of determining a hypothetical reasonable royalty rate. Rather, Plaintiff seeks a separate award based upon the value of collateral sales that is above and beyond the damages represented by an established royalty on Defendant's infringing sales. The Federal Circuit's decision in *Mor–Flo* provides no support for Plaintiff's position.

### 3. PREJUDGMENT INTEREST

85. In addition to a reasonable royalty, the Court may award Plaintiff "interest and costs." 35 U.S.C. § 284.

86. "[P]rejudgment interest should ordinarily be awarded absent some justification for withholding such an award." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983).

87. "In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Id.* at 655, 103 S.Ct. 2058. A patent owner is made whole by receiving prejudgment interest from the time that he would have received royalty payments, "since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment." *Id.* at 655–656, 103 S.Ct. 2058.

88. Prejudgment interest is applied only to primary or actual damages and not to punitive or enhanced damages. *Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1389 (Fed. Cir.1983).

89. "Generally, prejudgment interest should be awarded from the date of infringement to the date of judgment." *Nickson*, 847 F.2d at 800.

90. The rate of prejudgment interest and whether such interest should be compounded are matters within the district court's discretion. *Bio–Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed.Cir.1986).

91. "District courts have discretion to limit prejudgment interest where, for example, the patent owner has caused undue delay in the lawsuit, but there must be justification bearing a relationship to the award." *Nickson*, 847 F.2d at 800 (citations omitted).

92. In the present case, Defendant has presented no argument in opposition to Plaintiff's request for prejudgment interest, and the Court finds no reason to withhold such an award.

93. Plaintiff requests interest on Defendant's sales of running tracks and on Defendant's collateral sales. (Pl.Ex. 151(rev.), Schedules III & IV.) As noted above, however, the Court will not grant Plaintiff's request for damages on collateral sales.

94. Plaintiff's expert calculated prejudgment interest based upon applicable long term federal interest rates compounded monthly. (Pl.Ex. 151(rev., Sched.V.)) Defendant had not challenged the interest rates applied by Plaintiff's expert or the expert's method of computing interest. Accordingly, the Court finds the interest rates and method of computing interest applied by Plaintiff's expert to be appropriate.

95. Therefore, the Court shall award Plaintiff prejudgment interest on the royalties awarded by the Court for Defendant's sales of infringing running tracks. Prejudgment interest shall be calculated on such royalties from April 26, 1994, through the date of judgment in this action according to the rates and method of computation proposed by Plaintiff's expert.

## C. WILLFUL INFRINGEMENT

96. "[T]he court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.

97. While the statute does not prescribe a standard for applying treble damages,

> precedent establishes that a person having knowledge of an adverse patent has an affirmative duty to exercise due care to avoid infringement of a presumptively valid and enforceable patent. The statute thus recognizes the tortious nature of patent infringement and the public interest in a stable patent right, for enhanced damages are not compensatory but punitive.

SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1464 (Fed.Cir.1997).

98. In determining "willful infringement," "the primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing." Id. at 1464–65. Framed more specifically, the question before the Court in determining willful infringement is "whether a prudent person would have had sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated." Id. at 1465.

99. "Whether infringement is willful is a question of fact, and must be established by clear and convincing evidence." Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir.1998).

100. "As a general matter, a potential infringer with actual notice of another's patent has an affirmative duty of care that usually requires the potential infringer to obtain competent legal advice before engaging in any activity that could infringe another's patent rights." Id.; see also Underwater Devices, 717 F.2d at 1390 (noting that infringer's "affirmative duty includes, inter alia, the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity").

101. The issue of willful infringement is analyzed under the "totality of the circumstances." SRI, 127 F.3d at 1465. Factors to be considered in the analysis include "the closeness or complexity of the legal and factual questions presented" and "commercial factors that may have affected the infringer's actions." Id. In addition, courts may consider mitigating factors "such as whether there was independent invention or attempts to design around and avoid the patent or any other factors tending to show good faith." Id.

102. "The law of willful infringement does not search for minimally tolerable behavior, but requires prudent, and ethical, legal and commercial actions." Id.

103. Here, the Court concludes that Plaintiff has proven willful infringement by clear and convincing evidence. As more fully discussed below: (1) Defendant had actual notice of the '622 patent; (2) Defendant was warned by Plaintiff's patent counsel that its actions constituted infringement; (3) Defendant continued its infringement despite these warnings; and (4) Defendant did not seek the advice of patent counsel at any point.

104. First, Defendant had actual notice of the '622 patent. Defendant's President, Richard Dougherty, signed a licensing agreement on behalf of Dougherty Contractors in May, 1983, which granted Dougherty Contractors a license to use the Seal–Flex method in exchange for a royalty of eight cents per pound of rubber. Defendant's owner, William Dougherty, negotiated this agreement as the owner of Dougherty Contractors. Thus, Defen-

dant's principals were at one point willing to pay a royalty in exchange for a license to use the Seal–Flex method. The licensing agreement itself expressly stated that Plaintiff had applied for a patent. Further, Richard Dougherty and William Dougherty admitted knowing that Plaintiff had applied for and was granted a patent well before the filing of this action.

105. Second, Plaintiff's patent counsel contacted Defendant on at least two occasions, in 1994 and in 1998, indicating Plaintiff's willingness to challenge infringement of the '622 patent. Both Richard Dougherty and William Dougherty were aware as early as 1994 that Plaintiff's patent counsel was accusing Defendant of patent infringement.

106. Third, despite the termination of Dougherty Contractors' license and the warnings of Plaintiff's patent counsel, Defendant continued to install infringing running tracks. Defendant did not cease installation of Seal–Flex tracks until 2000. In this regard, the fact that Dougherty Contractors at one point in time paid a royalty in exchange for a license to use the Seal–Flex method is particularly strong evidence that Defendant's decision to utilize the Seal–Flex method after the termination of the licensing agreement constitutes willful infringement.

107. Fourth, despite the allegations of infringement, Defendant never sought the opinion of patent counsel. Neither William Dougherty nor Richard Dougherty were versed in patent law. Thus, their claims that the '622 patent was invalid, made without the advice of counsel, were simply not reasonable.

108. "An alleged infringer who intentionally blinds himself to the facts and law, continues to infringe, and employs the judicial process with no solidly-based expectation of success, can hardly be surprised when his infringement is found to have been willful." *Kloster Speedsteel AB v.*

*Crucible, Inc.,* 793 F.2d 1565, 1580 n. 11 (Fed.Cir.1986).

109. Under the totality of the circumstances in this case, the Court concludes that Plaintiff has presented clear and convincing evidence of willful infringement.

110. Therefore, the Court shall award Plaintiff treble damages. Tripling Plaintiff's royalty award of $ 165,552, produces an award of $ 496,656, exclusive of prejudgment interest and attorneys' fees.

## D. ATTORNEYS' FEES

111. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

112. The party seeking attorneys' fees must prove by clear and convincing evidence that the case is exceptional. *Reactive Metals and Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582 (Fed.Cir. 1985).

113. "Among the types of conduct which can form a basis for finding a case exceptional are willful infringement, ... misconduct during litigation, vexatious or unjustified litigation, and frivolous suit." *Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1551 (Fed.Cir. 1989); *see Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1573 n. 4 (Fed.Cir.1996) (noting that a district court generally may conclude that a case is exceptional and award attorneys' fees for any of the reasons that it increased damages under § 284).

114. Here, Plaintiff has established by clear and convincing evidence that this is an exceptional case warranting an award of attorneys' fees. The Court reaches this conclusion based upon the strong evidence of Defendant's willful infringement. *See Kloster,* 793 F.2d at 1580 ("Willfulness of infringement relates to the accused infringer's conduct in the market-

place. Because that conduct may be seen as producing an unnecessary and outcome-certain law suit, it may make the case so exceptional as to warrant attorney fees under § 285.").

115. Defendant's willful infringement alone supports a finding that this is an exceptional case. However, the Court notes that, given the strong evidence against Defendant in this action on all issues, Defendant's failure to present a serious defense provides further support for the Court's conclusion that this is an exceptional case.

116. While the defenses raised in this action were not frivolous, they were, on the whole, either without merit or non-existent. As noted above, Defendant presented essentially no defense on the issue of infringement. On the issue of validity, Defendant presented evidence that the Court found insufficient as a matter of law. Defendant conducted no discovery, filed no exhibit or witness lists, and presented no exhibits or witnesses at the damages trial.

117. While the Court recognizes the general policy "that awards of increased damages and attorney fees not be allowed to thwart efforts to challenge the validity of patents believed in good faith to be invalid," *Kloster*, 793 F.2d at 1581, the lack of any serious defense in this action leads the Court to conclude that Defendant's sole objective in this action may have been to prolong an unfavorable yet certain outcome.

## III. SUMMARY OF DAMAGES

**Reasonable Royalty on Defendant's Sales of Infringing Running Tracks**

| | | |
|---|---:|---:|
| Total Surface Square Yards | | 258,675 |
| Average Pounds of Rubber per Square Yard | | 8 |
| Total Pounds of Rubber | | 2,069,400 |
| Royalty per Square Yard | $ | .08 |
| Total Reasonable Royalty— Running Tracks (before Trebling) | $ | 165,552 |

| | | |
|---|---|---:|
| Triple the Amount of the Total Reasonably Royalty Based Upon Finding of Willful Infringement | $ | 496,656 |
| Prejudgment Interest | | Amount to be Determined * |
| Attorneys' Fees—Exceptional Case | | Amount to be Determined * |
| **TOTAL AWARD** | | ***Amount to be Determined*** * |

\* Plaintiff shall file applications for prejudgment interest and attorneys' fees following the entry of judgment.

## IV. CONCLUSION

Based upon the Court's Findings of Fact and Conclusions of Law,

**IT IS HEREBY ORDERED** that Plaintiff shall recover from Defendant the amount of $ 496,656.

**IT IS FURTHER ORDERED** that Plaintiff shall recover prejudgment interest and attorneys' fees as provided for in the Court's Findings of Fact and Conclusions of Law.

**IT IS FURTHER ORDERED** that, within twenty-one (21) days of the filing of the judgment in this case, Plaintiff shall file: (1) an application for prejudgment interest, computed in a manner consistent with the Court's Findings of Fact and Conclusions of Law; and (2) an application for attorneys' fees. If Defendant chooses to respond to Plaintiff's applications, Defendant shall file any such response within fourteen (14) days of service of such applications.

**SO ORDERED.**